THE CLEVELAND TRUST CO. ET AL., APPELLANTS, *v.* EATON ET AL., APPELLEES.

(No. 69-98—Decided March 4, 1970.)

*Messrs. Jones, Day, Cockley & Reavis, Mr. Victor DeMarco, Mr. H. Chapman Rose* and *Mr. George H. Rudolph,* for appellants.

*Messrs. Marshman, Snyder & Seeley, Mr. William F. Snyder, Mr. James J. Schiller* and *Messrs. Stokes, Character & Perry,* for appellees.

TAFT, C. J. After the decision of the Common Pleas Court and almost a year before the decision of the Court of Appeals, substantial changes in the laws of Ohio applicable to banks and trust companies became effective with the enactment of a general revision of the Ohio banking laws, which is hereinafter referred to as the Banking Act of 1967.

Those changes, although referred to briefly in the Court of Appeals "Memorandum to Lawyers," were given no effect in the Court of Appeals judgment affirming the part of the judgment of the Common Pleas Court described in the statement of this case.

In this action, all parties seek a declaratory judgment which will determine the rights of the parties in future controversies. This action does not involve a claim by any party for any relief with respect to anything which occurred before the Banking Act of 1967 became effective.

Defendants sought, and the Common Pleas Court judgment awarded them, an injunction against the voting of all shares held by Cleveland Trust as a fiduciary. Such an injunction will also have a prospective operation only.

By the Common Pleas Court judgment entry, plaintiff is only "enjoined under existing statutory law." If interpreted as governing the rights of the parties under statutes which are no longer effective, this injunction of the Common Pleas Court would be useless, as would be the declaratory judgment portion of its judgment, declaring, in effect,

what the rights of the parties would have been under such statutes. See *Johnson* v. *Preston* (1967), 12 Ohio St. 2d 100, 233 N. E. 2d 132 (recognizing that a change of law may support an application to modify an injunction and holding that such change may even justify acts contrary to the literal provisions of such injunction).

Hence, we must first determine whether the statutes relied upon by the Common Pleas Court as a basis for its judgment may still be relied upon as the basis for a judgment such as it rendered, and whether statutes enacted after that judgment should be considered in determining the judgment which should now be rendered by this court in the instant case.

In its conclusions of law, the Common Pleas Court stated:

"* * * the statutory prohibition of Section 1701.47(C) of the Ohio Revised Code that no corporation shall directly or indirectly vote any shares issued by it, applies to state bank and trust companies and is applicable to the plaintiff * * *. Thus, the plaintiff * * * is prohibited from voting Cleveland Trust stock, title to which is held by it or its nominee * * * in any * * * trust or fiduciary capacity * * * whether or not the governing instruments by their terms purport to authorize the voting of such shares of stock. * * *''

A similar conclusion is found in the judgment entry of the Common Pleas Court.

So far as pertinent, Section 1701.47(C), Revised Code, a part of the General Corporation Act, reads:

"No corporation shall directly or indirectly vote any shares issued by it. * * *''

In reaching its conclusion, the Common Pleas Court relied upon former Section 1103.42, Revised Code, which read:

"A banking corporation shall be created, organized, governed, and conducted, and its directors shall be chosen, in all respects in the same manner as is provided by Sections 1701.01 to 1702.58, inclusive, of the Revised Code, for

corporations generally, insofar as such manner is not inconsistent with Chapters 1101, 1103, 1105, 1107, 1109, 1111, 1113, and 1115 of the Revised Code."

The Common Pleas Court found Section 1701.47(C), Revised Code, not inconsistent with anything in those specified chapters of the Revised Code.

By the Banking Act of 1967, effective January 1, 1968, Section 1103.42 was repealed and Section 1101.10, Revised Code, was enacted. The latter statute was apparently intended to replace Section 1103.42. Section 1101.10 reads:

"A banking corporation shall be created, organized, governed, and conducted, and its directors shall be chosen, in all respects in the same manner as is provided by Sections 1701.01 to 1701.46, inclusive, *divisions (A) and (B) of Sections 1701.47*, 1701.48 to 1701.54, inclusive, divisions (A) and (B) of Sections 1701.55, 1701.56 to 1702.58, inclusive, of the Revised Code, for corporations generally, insofar as such manner is not inconsistent with Chapters 1101, 1103, 1105, 1107, 1109, 1111, 1113, 1115, 1117, 1119, 1121, 1123, 1125, 1127 and 1129 of the Revised Code." (Emphasis added.)

It is apparent from a reading of this statute that Section 1701.47(C) is no longer applicable to a banking corporation.

Section 1109.10 which was enacted as a part of the Banking Act of 1967, reads, in part:

"(C) Except as otherwise expressly provided by the instrument creating the fiduciary relationship, any trust company may exercise any and all voting, consenting, and dissenting rights, includng the right to vote for the election of directors, pertaining to stocks, bonds, or other securities held by it in any fiduciary capacity, including such rights pertaining to stocks, bonds, or other securities issued by the fiduciary in its individual corporate capacity and held by it in any fiduciary capacity, provided:

"(1) In the case of any fiduciary relationship created prior to January 1, 1968, voting rights pertaining to any

shares of such trust company's own stock held by it in such fiduciary relationship, if exercised, shall be exercised with respect to the election of directors, only in accordance with any provisions of law applicable thereto and without regard to the first paragraph of division (C) and divisions (C) (2) (a), (b), and (c) of this section and such portions of division (C) shall not be construed to be determinative of such voting rights nor to be declaratory of a public policy with respect to such voting rights.

"(2) In the case of any fiduciary relationship created on or after January 1, 1968, voting rights pertaining to any shares of such trust company's own stock held by it in such fiduciary relationship shall be exercised by it with respect to the election of directors, only if and as directed in writing by any person described in division (C) (2) (a), (b), or (c) of this section, provided that such person may not be the trust company or a director, officer, or employee (except as to fiduciary relationships in which such director, officer, or employee is a settler [settlor] or beneficiary) or a nominee, agent, attorney, or subsidiary corporation thereof:

"(a) Any person, including a settlor or beneficiary, who has the right under the terms of the instrument under which shares are held to determine the manner in which shares shall be voted, or if there be no such person;

"(b) Any person acting as cofiduciary under the instrument under which such shares are held, or if there be no such person;

"(c) Any person, having the right of revocation or amendment of the instrument under which such shares are held.

"(D) If there be more than one person having power to direct voting under division (C) (2) (a), (b), or (c) of this section and they fail to agree, each such person shall have the right to direct voting with respect to the election of directors as to any equal number of shares.

"(E) As used in this section:

"(1) The term 'cofiduciary' shall include but shall

not be limited to cotrustee, coexecutor, coadministrator, coguardian, co-agent, and any person who under the terms of the instrument creating the fiduciary relationship has the right or power to direct, approve or consent to, or be consulted with respect to, the making, retention, or sale of investments thereunder;

"(2) The term 'instrument' shall include but shall not be limited to any will, declaration of trust, agreement of trust, agency, or custodianship, or court order creating a fiduciary relationship.

"(F) Shares as to which the voting rights with respect to the election of directors may not be exercised under this section shall not be considered as outstanding for the purpose of computing the voting power of the corporation or of shares of any class thereof with respect to the election of directors.

"(G) This section does not authorize a trust company acting as a probate fiduciary to perform any act prohibited by Section 2109.44 of the Revised Code, unless such act is essential to the exercise of an authority expressly granted by this section."

Thus, as to any fiduciary relationship created on and after January 1, 1968, the General Assembly has clearly expressed its intention as to whether and how a trust company may vote its own shares held by it in a fiduciary capacity. As to such fiduciary relationships, there is no longer any need for the declaratory judgment sought by the parties to this action.

As to those fiduciary relationships created prior to January 1, 1968, division (C)(1) of Section 1109.10, Revised Code, expresses a legislative intention that the new statute apply *except only* as to "voting rights pertaining to any shares of * * * [a] trust company's own stock held by it in * * * [a] fiduciary relationship, if exercised * * * with respect to the election of directors." If so exercised, those voting rights are to "be exercised * * * *only in accordance with any provisions of law applicable thereto and without regard to* the first paragraph of division (C) and

divisions (C)(2)(a), (b), and (c)," and those portions of division (C) are not to "be considered to be determinative of such voting rights nor to be declaratory of a public policy with respect to such voting rights."

Nothing in the Banking Act of 1967, or in any other enactment of the General Assembly, indicates that any provisions of law now existing, other than the portions of Sections 1109.10(C), so specified, are to be disregarded and not included in "provisions of law applicable," as that term is used in Section 1109.10(C)(1). Also, there is nothing in the Banking Act of 1967 to indicate a legislative intention to regard any statutory section, such as former Section 1103.42, Revised Code, which that Act specifically repealed, as included within the words "provisions of law applicable" as used in Section 1109.10(C)(1). Thus, the General Assembly has expressed an intention that, in determining whether and how a trust company may exercise, with respect to the election of its directors, "voting rights pertaining to" its own shares held by it in a fiduciary relationship created prior to January 1, 1968, consideration should be given only to statutes now in effect, other than the above-specified portion of Section 1109.10(C), and to the common law to the extent that it is not inconsistent with such statutes.

In contending that only statutes in effect immediately prior to January 1, 1968 should be considered in determining the right of Cleveland Trust, in elections for its directors, to vote its own shares held by it in a fiduciary capacity created prior to that date, defendant relies upon a report of the Legislative Service Commission with respect to the Senate Bill which ultimately became the Banking Act of 1967.

That report states, with respect to Section 1109.10, divisions (C) to (G), inclusive, as set forth in the bill proposing the Banking Act of 1967 before many of the amendments thereof were made by the General Assembly:

"In the pending case of *Cleveland Trust Co.* v. *Eaton*, the trial court has stated that under existing Ohio law a

bank may not vote shares of its own stock which it holds as part of a trust estate.

"The proposed statute states that the new standards which it would establish are not to determine the voting rights of stock in any trust created before the effective date of the act (January 1, 1968), nor to declare any public policy with respect thereto. Therefore, future practices of banks in all of its trusts created before that date will be controlled by present law, whatever the courts may finally hold its effect to be."

It is contended that "present law" must mean only law in existence before January 1, 1968 and that therefore the words "any provisions of law applicable thereto," as used in Section 1109.10(C)(1), were intended to include only the statutory law in existence before January 1, 1968.

This is not consistent with the intention which we believe the General Assembly clearly expressed. In Section 1109.10(C), after stating generally that a "trust company may exercise any and all voting * * * rights * * * pertaining to stocks * * * issued by the fiduciary * * * and held by it in any fiduciary capacity," the General Assembly stated in division (C)(1) that, "in the case of any fiduciary relationship created prior to January 1, 1968, voting rights pertaining to any shares of [its] * * * own stock held by it in such fiduciary relationship * * * shall be exercised with respect to the election of directors, only in accordance with any provisions of law applicable thereto and without regard to" certain specified portions of Section 1109.10(C), and further stated that those specified portions should "not be construed to be determinative of such voting rights nor to be declaratory of a public policy with respect to such voting rights."

As previously stated, nothing in the Banking Act of 1967 or in any other enactment of the General Assembly indicates that any provisions of law now existing, other than the portions of Sections 1109.10(C) so specified, are to be disregarded and not included in "provisions of law applicable," as that term is used in Section 1109.10(C)(1).

138

Also, there is nothing in that Act to indicate a legislative intention to regard any statutory section, such as former Section 1103.42, Revised Code, which the Banking Act of 1967 specifically repealed, as included within the words "provisions of law applicable" used in Section 1109.10(C)(1). Thus, the General Assembly has expressed an intention that, in determining whether and how a trust company may, with respect to the election of its directors, exercise "voting rights pertaining to" its own shares held by it in a fiduciary relationship created prior to January 1, 1968 consideration should be given only to statutes now in effect, other than the foregoing specified portion of Section 1109.10(C), and to the common law to the extent that it is not inconsistent with such statutes.

In our opinion, a report of the Legislative Service Commission, with respect to proposed legislation, may not be used to give a meaning to a legislative enactment other than that which is clearly expressed by the General Assembly. As stated in paragraph five of the syllabus of *Sears* v. *Weimer* (1944), 143 Ohio St. 312, 55 N. E. 2d 413, "Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning there is no occasion for resorting to rules of statutory interpretation." See also *Slingluff* v. *Weaver* (1902), 66 Ohio St. 621, 64 N. E. 574.

That rule of construction is one of long standing in the federal courts, as well as in our own. As stated in *United States* v. *Missouri Pacific Rd. Co.* (1929), 278 U. S. 269, 278, 73 L. Ed. 322:

"* * * where the language of an enactment is clear and construction according to its terms does not lead to absurd or impracticable consequences, the words employed are to be taken as the final expression of the meaning intended. And in such cases legislative history may not be used to support a construction that adds to or takes from the significance of the words employed."

See also *United States* v. *Oregon* (1961), 366 U. S. 643, 648, 6 L. Ed. 2d 575.

Although investigation discloses that the Legislative Service Commission report was distributed to members of the General Assembly, to the press and to others interested in the proposed act, it was not made a part of the record of the General Assembly and has not otherwise been published and is not generally available even in the best of the law libraries in this state.

Also, notwithstanding the fact that the Legislative Service Commission, composed of seven members from each house of the General Assembly, is created and its duties prescribed by Sections 103.11 to 103.13, Revised Code, we find nothing in those statutes to indicate that, in determining what the General Assembly intends by the language which it uses in the enactment of a bill, any weight should be given to what that commission stated in its report to the General Assembly with regard to that bill.

In contending that only statutes in effect immediately prior to January 1, 1968 should be considered in determining the right of Cleveland Trust, in an election for its directors, to vote its own shares held by it in a fiduciary capacity created prior to that date, defendants state that such a result is "compelled by" Sections 1.20 and 1.21, Revised Code. They do not explain why such a result is so compelled.

We fail to see how Section 1.21 could even suggest, much less compel, such a result.

However, the literal, although ambiguous, language of Section 1.20 might be interpreted to support such a result. That section reads:

"When a statute is repealed or amended, such repeal or amendment does not affect pending actions, prosecutions, or proceedings, civil or criminal. When the repeal or amendment relates to the remedy, it does not affect pending actions, prosecutions, or proceedings, unless so expressed, nor does any repeal or amendment affect causes of such action, prosecution, or proceeding, existing at the time of such amendment or repeal, unless otherwise expressly provided in the amending or repealing act."

A mere reading of that statute should be sufficient to demonstrate its ambiguity. Many opinions and decisions of this court have recognized that ambiguity. See, for example, *Smith* v. *New York Central Rd. Co.*, 122 Ohio St. 45, 170 N. E. 637, and *Kilbreath* v. *Rudy*, 16 Ohio St. 2d 70, 242 N. E. 2d 658.

As hereinbefore suggested, a judgment, providing for a declaration of rights and an injunction relating only to future potential controversies, would be useless if based upon statutes no longer in effect when the judgment is finally approved by an appellate court. In our opinion, the General Assembly could not have intended that Section 1.20, Revised Code, be applied so as to require an appellate court to affirm such a useless judgment. Hence, we conclude that, to the extent that a judgment in an action will provide a declaration of rights as to controversies or an injunction against conduct which can occur only after statutory amendments and repeals become effective during the pendency of such action on appeal, Section 1.20, Revised Code, should not be applied so as to prevent such amendments or repeals from governing the judgment rendered by the appellate court.

Therefore, in determining the present right of an Ohio trust company, in an election for its directors, to vote its own shares held by it in a fiduciary capacity created prior to January 1, 1968, a court should give effect to the applicable statutory sections enacted by the Banking Act of 1967, other than the first paragraph of division (C) and divisions (C) (2) (a), (b), and (c) of Section 1109.10, Revised Code, and should also give effect to the part of that Act which repealed statutory sections theretofore existing.

It follows that Section 1701.47(C), Revised Code, is not now applicable to trust companies. We do not believe that any useful purpose would be served by our consideration of whether that portion of the General Corporation Act was applicable to trust companies before the effective date of the Banking Act of 1967. See *State, ex rel. Kearns,* v. *Rindsfoos* (1954), 161 Ohio St. 60, 118 N. E. 2d 138, and

*Graves* v. *Security Trust Co.* (Ky. 1963), 369 S. W. 2d 114.

Defendants contend further that, even if Section 1701.-47(C) is not applicable, public policy and the common law would prohibit a bank from voting, in an election for directors, those of its own shares held by it in a fiduciary capacity created prior to January 1, 1968.

The authorities cited by defendants in support of this contention all involve voting rights resulting from property owned directly or indirectly by the corporation. See *Ex parte Holmes,* 5 Cowan 426 (New York 1826); *Allen* v. *De Lagerberger* (Superior Court of Cincinnati 1888), 10 O. D. R. 341; *American Railway—Frog Co.* v. *Haven* (1869), 101 Mass. 398; *Tapper* v. *Boston Chamber of Commerce,* 235 Mass. 209, 126 N. E. 464; *Lawrence* v. *I. M. Parlier Estate Co.* (1940), 15 Cal. 2d 220, 100 P. 2d 765; *Monsseaux* v. *Urquhart* (1867), 19 La. Ann. 482; *O'Connor* v. *International Silver Co.* (1905), 68 N. J. Eq. 67, 59 A. 321, affirmed 68 N. J. Eq. 680, 62 A. 408; *Robotham* v. *Prudential Ins. Co.* (1903), 64 N. J. Eq. 673, 53 A. 842; *Thomas* v. *International Silver Co.* (1907), 72 N. J. Eq. 224, 73 A. 833; *Dal-Tran Service Co.* v. *Fifth Avenue Coach Lines* (1961), 217 N. Y. Supp. 2d 193, reversed, 14 App. Div. 2d 349, 220 N. Y. Supp. 2d 549; *Continental-Midwest Corp.* v. *Hotel Sherman* (1957), 13 Ill. App. 2d 188, 141 N. E. 2d 400; *Atterbury* v. *Consolidated Coppermines Corp.* (1941), 26 Del Ch. 1, 20 A. 2d 743.

Such voting rights have been regarded in effect as corporate property. If made available without consideration to anyone, such rights should be made available, as dividends of the corporation are, to each stockholder in proportion to the amount of his ownership interest in the corporation. Because of the impracticability of doing this and because the same effect could be obtained by suppressing the exercise of voting rights with respect to such stock, the common law developed a rule preventing a corporation from exercising, in the election of directors, voting rights on those of its shares owned by it. The cases reasoned

that voting rights of the corporation resulting from corporate assets should belong to stockholders in proportion to their ownership interests in the corporation and therefore could not be used by the directors in opposition to those to whom they should belong. The fact that not preventing such use might result in directors perpetuating themselves in office was mentioned, but not as the reason for the rule. Thus, it is stated by Taft, J. (later Chief Justice of the Supreme Court of the United States), in the opinion in *Allen* v. *De Lagerberger, supra* (10 O. D. R. 341):

" * * * The power to vote is a power incident to ownership of stock, but to allow the directors acting for the corporation to vote the stock would not be distributing the power equally among the stockholders, as the dividends are distributed equally amongst them by payment into the treasury of the company, and it would be entrusting to persons in power the means of keeping themselves in power. As is said in *Ex parte Holmes*, 5 Cowan 426, 'if there could be a vote at all upon the stock, one would suppose it must be by each stockholder of the company in proportion to his interest in it.' Now, it would of course be inconvenient that fractions of shares should be voted. Exactly the same result is accomplished by suppressing the vote on the stock altogether, because by so doing each voting share is given an exactly equal additional weight. This view of the reason for the suppression of the voting power of company stock is supported by the case of *Farwell* v. *Houghton Copper Works,* 8 Federal Reporter 66, where it was held that the company treasurer might vote shares bought by the company * * * where all the stock was represented and all consented to the vote. * * * the suppression of the voting power of company stock is only a means of distributing the voting power equally among its stockholders * * * ."

The holding of the *Allen case* was that the pledgee of company-owned stock could vote it for directors. In reaching that decision, it was pointed out that the reason for

not allowing company-owned stock to be voted for directors did not exist in that case. This appears from the following portion of the opinion:

" * * * the inability of the company to vote was in fact an equal distribution of the power to vote among the shareholders, and * * * therefore there is no reason why, under a pledge by express contract, the right to vote may not be transferred, if transferred for a consideration enuring to the benefit of all the stockholders."

To substantially the same effect, see the opinion of Pitney, V. C., in *O'Connor* v. *International Silver Co.*, *supra* (68 N. J. Eq. 67), 69.

Likewise, the reason for not allowing a bank to vote its own shares for directors does not exist where those shares are held by it as trustee for others. In such an instance, the voting rights do not result from any ownership interest of the bank in the shares to which they relate. That ownership interest is vested in those who are the beneficiaries of the trust. If shares so held by the bank in trust cannot be voted, voting rights belonging to those beneficiaries are in effect given without consideration to the remaining shareholders.

We conclude therefore that any common-law rule, against a corporation in an election for its directors voting shares of stock owned by the corporation, does not apply to such corporation so voting its own shares held by it as a trustee for others.

Defendants contend also that common-law principles of trust law prevent a bank, which holds its own shares as trustee for others, from voting those shares for directors, even where the bank is authorized to hold and vote such shares by the instrument creating the trust relationship.

In support of this contention, defendants rely upon *In re Estate of Binder* (1940), 137 Ohio St. 26, 27 N. E. 2d 939, 129 A. L. R. 130, and *In re Trusteeship of Stone* (1941), 138 Ohio St. 293, 34 N. E. 2d 755. Paragraph four of the syllabus of the *Stone case* reads:

"A corporate trustee may not acquire its own shares of stock as an investment for a trust in its charge, or retain its own shares in the trust, *unless express authorization* therefor is contained *in* the *instrument creating* the *trust,* or in a provision of law." (Emphasis added.)

Apart from Section 1701.47(C), Revised Code, defendants have not called our attention to any statutory provision preventing a corporate trustee from voting shares of its stock that it was authorized to hold as trustee. As pointed out, that statute would not now do so, if it ever would have.

Defendants have endeavored to conjure up instances in which the interests of Cleveland Trust, in voting shares of its stock held by it as trustee for directors of The Cleveland Trust Company, may conflict with the interests of those for whom it holds such shares as a trustee. It would be almost as easy to conjure up instances where the interests of those for whom the bank holds its shares as a trustee will coincide with the bank's own interests in the election of its directors. In an instance where the bank's own interests do coincide with the interests of the trust, should the bank as trustee be prevented from voting trust shares so as to protect the trust merely because in some other instance it might be tempted to vote those shares to advance only its own interests?

Why should the trust be deprived of a voting of its shares by the trustee so as to protect its interests?

In our opinion, the mere fact that a corporate trustee might acquire some advantage from voting for directors those of its own shares which it holds as trustee does not require the conclusion that a trust should be deprived of the protection that the trustee can and should give to the trust by voting such shares so as to benefit the trust.

We recognize that, in voting shares held by it in trust, a bank may commit a breach of trust. It may do so, whether the shares so held by it in trust are shares issued by it or shares of another corporation. In either instance,

where it does commit such a breach of trust, it can be held accountable to the trust.

But, even where a transaction involves a violation of the trustee's duty of loyalty or amounts to so-called self-dealing, the decisions relied upon by defendants recognize that the transaction is only "voidable" and not void. *In re Estate of Binder, supra* (137 Ohio St. 26), paragraph 11 of the syllabus; *In re Trusteeship of Stone, supra* (138 Ohio St. 293), paragraph two of the syllabus. In such an instance, someone acting on behalf of the trust may rescind the transaction (*In re Trusteeship of Stone*, paragraph two of the syllabus), or have the trustee held liable for any resulting loss (*In re Estate of Binder*, paragraph 11 of the syllabus), or prevent the trustee from acting contrary to the interests of the trust. See *Steinberg* v. *Central Trust Co.* (1969), 18 Ohio St. 2d 33, 247 N. E. 2d 303, paragraph two of the syllabus.

However, no representative of any trust is before this court complaining because Cleveland Trust may vote any shares which it holds as trustee. As pointed out above, if shares held by Cleveland Trust in trusts cannot be voted, then voting rights belonging to beneficiaries of those trusts will in effect be given without consideration to the remaining shareholders, including the defendants. Certainly, defendants cannot rely upon, and in effect appropriate, the rights of others to advance their interests. As stated in 2 Scott on Trusts 1461, Section 193.1:

"* * * there are two distinct questions with respect to the voting of shares of stock by trustees. The first question relates to the legal power of the trustee to vote the shares, and the validity of the vote so far as it affects the corporation and its shareholders and third persons. The second question relates to the equitable duties of the trustee to the beneficiaries with respect to the exercise of the legal power to vote. The vote of the trustee cannot be rejected on the ground that he is guilty of a violation of his duty to the beneficiaries, since they alone can object."

For the foregoing reasons, the judgment of the Court of Appeals is reversed and final judgment is rendered for appellants in accordance with the syllabus of this case.

*Judgment reversed.*

O'NEILL, DUNCAN and CORRIGAN, JJ., concur.
MATTHIAS, J., not participating.

SCHNEIDER, J. The parties here have not demonstrated on the record that an actual, as opposed to an academic, controversy exists between them. The facts are that up to the time of the institution of this action, the directors of the Cleveland Trust Company have been consistently elected by the votes of an overwhelming majority of its outstanding shares, including those held by it in its fiduciary capacity. It has not been claimed that the future may produce a minority block of shareholders of a size sufficient to change that pattern so that the votes of the shares held in a fiduciary capacity would be the deciding factor if eliminated.

In view of this and the further fact, as mentioned in the opinion of the court, that the real parties in interest (the beneficiaries of the trusts involved) have not been joined in this action, the opinion of the court is advisory only and should not be promulgated. Attempts to procure such rulings are not only unfair to other litigants who are engaged in legitimate controversies but to the judicial system itself, whose vitality depends, in part, upon the resolution of *actual* cases and controversies.

I would concur in a judgment expunging from the case the declaratory judgment of the court below and dismissing the action, leaving the parties in the position in which they were when the action was filed.

HERBERT, J., concurs in the first paragraph of the syllabus and dissents from the judgment:

In reading the statutes applicable to this appeal, I find the result reached by the majority to be contrary to the purpose of those enactments and in contravention of clear legislative intent.