REYNOLDS et al., Appellees,

v.

GOLL, Appellant.

[Cite as *Reynolds v. Goll* (1992), 80 Ohio App.3d 494.]

Court of Appeals of Ohio,
Lorain County.

No. 91CA005140.

Decided May 13, 1992.

*Douglas M. Brill,* for appellees.

*Thomas H. Sanborn,* for appellant.

---

REECE, Judge.

Defendant-appellant, Robert P. Goll, appeals from the judgment of the Lorain County Juvenile Court awarding custody of his youngest daughter, Diana Goll, to plaintiffs-appellees, Paul A. and Virgina L. Reynolds, husband and wife.

Diana was born to Robert and his wife Adelina Goll on September 4, 1984. At that time, the Golls had three older daughters, Girley Ann, Elizabeth, and Kimberly. Shortly after Diana's birth, Adelina was diagnosed with cancer and had to be hospitalized. Confronted with the task of supporting his family and a newborn child, Robert sought assistance in caring for Diana. Virginia Reynolds and Mike Doud, both of whom worked with Robert, agreed to help. While there is some dispute as to which of the parties initiated the plan for the Reynoldses to care for Diana, there is no question that Diana began living in their home. Originally, she stayed with the Reynoldses from Friday through Monday of each week, residing with the Douds the remainder of the time. This arrangement was discontinued in December 1985, when Diana began living with the Reynoldses on a full-time basis.

Adelina died on March 17, 1986. The parties disagree over the extent to which Robert visited Diana both before and after Adelina's death. They also differ over whether Robert offered to reimburse the Reynoldses for their expenses in caring for Diana and whether these offers were refused. What is not in dispute is that Diana continued to live with the Reynoldses, without financial support from Robert, although the parties did agree that the Reynoldses would claim Diana as an exemption for income tax purposes.

In November 1986, Robert married Janet Goll. By 1988, Robert began expressing a desire for Diana to live with him and his new wife. The Reynoldses, having become attached to Diana over the past four years, resisted any attempts to remove Diana from their home. In July 1989, the Reynoldses commenced this action for Diana's custody. The court appointed a guardian *ad litem,* also an appellee in this case, to represent Diana's interests. Following a two-day trial, the juvenile court, by its judgment entry dated July 31, 1990, awarded custody of Diana to the Reynoldses with provisions for regular visitation by Robert. Robert was also ordered to pay child support. Robert appeals from this judgment, raising three assignments of error. The first two assignments of error are interrelated and will be addressed together.

### Assignments of Error I and II

"I.  The trial court erred in determining that the sole test in determining the custody between a parent and a non-parent is the best interest criteria contained in section 3109.04(C) Ohio Revised Code without any consideration of the paramount interest of a natural parent to custody of his child.

"II.  The trial court erred in granting custody to the plaintiffs-appellees without a finding that defendant-appellant was an unsuitable parent."

The issue in this case is whether, in proceedings brought pursuant to R.C. 2151.23(A)(2), the juvenile court may award custody to a non-parent without considering the "suitability" of the parent.  Specifically, the question is whether the welfare of the child, or the "best interest" test, as codified in R.C. 3109.04, should be the court's sole consideration in a custody action between a parent and a non-parent.

Historically, two distinct and sometimes conflicting considerations have developed in custody cases.  As early as 1855, the Supreme Court established that custody determinations "should be made with a single reference to [the child's] best interests."  *Gishwiler v. Dodez* (1855), 4 Ohio St. 615, 617.  Later, in deciding a dispute between a parent and non-parent, the court declared that a "suitable" parent's right to the custody of his child "is paramount to that of all other persons."  *Clark v. Bayer* (1877), 32 Ohio St. 299, paragraph one of the syllabus.  While holding that the welfare of the child should be the court's first consideration, *Clark* recognized the common-law right of natural parents, as against all others, to raise and care for their children.  *Id.* at 310–313.  See 59 American Jurisprudence 2d (1971) 113, Parent and Child, Section 28.

When the Ohio Revised Code was adopted, these dual considerations, child welfare and parental suitability, were codified in R.C. 3109.04.  In 1974, this statute was amended, eliminating any consideration of a parent's suitability and adopting the "best interest of the child" as the only test in deciding custody in domestic relations cases.  R.C. 3109.04, as amended by H.B. No. 233 (135 Ohio Laws, Part II, 603, 617, effective September 23, 1974), provides in part:

" * * * If the court finds, with respect to any child under eighteen years of age, that custody to neither parent is in the *best interest of the child*, it may commit the child to a relative of the child or certify a copy of its findings, together with so much of the record and the further information, in narrative form or otherwise, as it deems necessary or as the juvenile court requests, to the juvenile court for further proceedings, and thereupon the juvenile court shall have exclusive jurisdiction."  (Emphasis added.)

This new statute was first analyzed by the Supreme Court in *Boyer v. Boyer* (1976), 46 Ohio St.2d 83, 75 O.O.2d 156, 346 N.E.2d 286, paragraph one of the syllabus, stating:

"In determining who shall have the care, custody, and control of a child under 18 years of age, *even though the child's parents are not found to be unfit or unsuitable,* the court may commit the child to a relative of the child where the court finds that custody to neither parent is in the best interest of the child.  (R.C. 3109.04 construed)."  (Emphasis added.)

From the plain language of both the statute and its interpretation in *Boyer,* it is clear that parental suitability is no longer a factor for determining custody under R.C. 3109.04.

In *In re Perales* (1977), 52 Ohio St.2d 89, 6 O.O.3d 293, 369 N.E.2d 1047, the issue arose whether the "best interest" test is also the sole test in a custody action brought in the juvenile court pursuant to R.C. 2151.23(A)(2).  The jurisdiction of the juvenile court under R.C. 2151.23(A)(2) is expansive, allowing the court "[t]o determine the custody of any child not a ward of another court."  See *In re Torok* (1954), 161 Ohio St. 585, 53 O.O. 433, 120 N.E.2d 307. In *Perales,* the Justices held that the court must consider the parent's suitability in custody actions between a parent and a non-parent brought under R.C. 2151.23(A)(2).  *Perales, supra,* 52 Ohio St.2d at 96, 6 O.O.3d at 296, 369 N.E.2d at 1051.  Relying on the common-law rights of parents as expressed in *Clark,* the court found that "suitable" parents have a "paramount" right to the custody of their minor children.  *Perales, supra,* at 97, 6 O.O.3d at 297, 369 N.E.2d at 1051–1052, citing *Clark, supra,* 32 Ohio St. at 310.

The court reasoned that unlike actions brought under R.C. 2151.23(A)(2), "R.C. 3109.04 deals with custody disputes arising out of divorce actions." *Perales, supra,* 52 Ohio St.2d at 96, 6 O.O.3d at 296, 369 N.E.2d at 1051.  In domestic relations cases, both parents are typically suitable persons, standing in parity with each other.  Accordingly, the best interests of the child become the only distinguishing criteria in deciding which parent should be awarded custody.  *Perales, supra,* at 96–97, 6 O.O.3d at 296–297, 369 N.E.2d at 1051–1052.  From *Boyer* and *Perales,* the rule emerged that in domestic relations actions the child's "best interest" is the sole consideration, while a parent's "suitability" must also be considered in a custody action between a parent and non-parent brought under R.C. 2151.23(A)(2).

Although this rule should have been clear, it may have become unsettled, in part due to this court's decision in *Thrasher v. Thrasher* (1981), 3 Ohio App.3d 210, 3 OBR 240, 444 N.E.2d 431.  In *Thrasher,* we stated: "Clearly the best interests test of R.C. 3109.04 was not meant to apply only to disputes between

parents as *Perales* indicates." *Thrasher, supra,* at 213, 3 OBR at 243, 444 N.E.2d at 434. But the Supreme Court recognized, contrary to our interpretation, that the "best interest" test may also apply to custody disputes between a parent and non-parent under R.C. 3109.04. The court specifically stated:

"Someone other than a parent may be awarded custody of a child pursuant to R.C. 3109.04(A) or (B) only if 'custody to neither parent is in the best interest of the child.'" *Perales, supra,* 52 Ohio St.2d at 96, 6 O.O.3d at 296, 369 N.E.2d at 1051, fn. 7.

In *Thrasher* this court went on to state:

"It is evident that there may be disputes between parents and non-parents under either R.C. 3109.04 or 2151.23, and it would be inconsistent and unwise to have two distinct substantive law tests, one for each statute. * * * Thus, by re-introducing the suitability test [in *Perales* ] the court in effect modified *Boyer, supra,* and its construction of R.C. 3109.04." *Thrasher, supra,* 3 Ohio App.3d at 213, 3 OBR at 243, 444 N.E.2d at 434.

The result was that this court viewed *Perales* as requiring courts to consider the suitability of the parent in all custody actions involving a non-parent, finding no distinction between cases commenced under R.C. 3109.04 and R.C. 2151.23. *Id.* at 214, 3 OBR at 243, 444 N.E.2d at 434–435. As the appellees point out, *Thrasher* has come under criticism, with some courts applying solely the "best interest" test in accordance with the plain language of R.C. 3109.04. See *Manering v. Manering* (May 3, 1989), Jackson App. No. 559, unreported, 1989 WL 47871; *Woosley v. Woosley* (Dec. 3, 1987), Licking App. No. CA–3268, unreported, 1987 WL 27845. The position of these courts finds support in the Supreme Court's holding that the "best interest" test is the sole consideration in custody modification proceedings brought under R.C. 3109.04(B). *Masitto v. Masitto* (1986), 22 Ohio St.3d 63, 65, 22 OBR 81, 82, 488 N.E.2d 857, 859.

While we now agree, in accordance with *Boyer,* that the "best interest" test is the only factor for the court to consider in R.C. 3109.04 proceedings, this does not mean that it is also the sole test under R.C. 2151.23(A)(2). The law in this area has developed two separate substantive tests to be applied depending upon the jurisdiction of the court. As previously stated, under the common law a parent's interest in his child is "paramount" to all others. Custody could be awarded to a non-parent only upon a finding of unsuitability. With the codification of the "best interest" test in 1974, the General Assembly expressed a clear intent to modify the common law and eliminate consideration of a parent's suitability in domestic relations actions. But the legislature made no comparative change in R.C. Chapter 2151. R.C. 2151.23 is a jurisdictional statute with no substantive law test. See *Perales, supra,* 52

Ohio St.2d at 100, 6 O.O.3d at 298, 369 N.E.2d at 1053 (P. Brown, J., dissenting); *Thrasher, supra,* 3 Ohio App.3d at 213, 3 OBR at 242, 444 N.E.2d at 434. As such, actions brought under R.C. 2151.23(A)(2) must apply the common-law standards in custody disputes between a parent and a non-parent when no substantive law is provided in the Revised Code.

Additionally, we see no inconsistency in applying two separate substantive law tests to these statutes. As *Perales* pointed out, in domestic relations actions the "best interests" of the child becomes the only distinguishing characteristic between two similar parents. Once a court begins to apply the "best interest" analysis, it would be incongruous to change tests. If the court determines that custody to neither parent is in the "best interests" of the child, how could it then consider the "suitability" of the parent before awarding custody to a non-parent (*e.g.,* a relative). Consideration of suitability could mandate placing the child with a parent after the court has already decided such placement is not in the child's best interest.

We also consider the difference between custody determinations under R.C. 3109.04 and R.C. 2151.23. In the former, a custody decision is incident to a suit brought for "divorce, legal separation, or annulment" or "in any proceeding pertaining to the allocation of *parental rights and responsibilities.*" (Emphasis added.) R.C. 3109.04(A). These actions usually require at least one of the parents to seek the court's jurisdiction. In contrast, custody proceedings brought under R.C. 2151.23(A)(2) are original actions which may be initiated by anyone claiming an interest in the child.

Having determined that the law has developed two separate standards, depending upon the jurisdiction of the court, the next issue is whether this arrangement has been altered by recent legislation. In the present case, the appellees contend, and the trial court concurred, that H.B. No. 93 (140 Ohio Laws, Part I, 1839, effective March 19, 1984) adopted the "best interest" standard as the sole test to be used by the juvenile courts when exercising their jurisdiction under R.C. 2151.23. In essence they argue that R.C. 3109.04 supplies the substantive law for R.C. 2151.23. We do not agree.

Under H.B. No. 93, a reference to R.C. 3109.04 was added to R.C. 2151.-23(F), which as amended stated:

"The juvenile court shall exercise its jurisdiction in child custody matters in accordance with *section 3109.04 and* sections 3109.21 to 3109.36 of the Revised Code." (Emphasis of new language added.)

Appellees maintain that the intent of the legislature was to require the juvenile court to apply the "best interest" test in all cases under its R.C. 2151.23 jurisdiction.

Even prior to the 1974 amendment, R.C. 3109.04 allowed certification of custody issues arising in domestic cases to the juvenile court when neither parent was found to be suitable. With the adoption of the "best interest" standard in 1974 (H.B. No. 233), custody determinations could still be certified to the juvenile court when placement with neither parent was in the "best interest" of the child. R.C. 2151.23 is a jurisdictional statute. It does not supply any substantive law. From the plain language, this amendment was intended to clarify that in those cases certified to the juvenile court pursuant to R.C. 3109.04 and 3109.06, the juvenile court was to exercise its jurisdiction in accordance with R.C. 3109.04. The 1984 amendment simply set out the substantive law for the juvenile court to apply in those limited custody determinations.

As already noted, it would be incongruous to change substantive law tests in the middle of a custody determination. In those cases certified to the juvenile court, it would be required to determine custody based solely on the child's best interest. But it is erroneous to extrapolate, from this one reference to R.C. 3109.04, a legislative intention to eliminate the "paramount" common-law rights of a parent as recognized in *Clark, supra,* and *Perales, supra:*

"If, by what it does, the General Assembly intends in effect to change the law as previously announced by this court, it should express such an intention. Such an intention will not ordinarily if ever be implied from its silence." *Lynn v. Supple* (1957), 166 Ohio St. 154, 159, 1 O.O.2d 405, 408, 140 N.E.2d 555, 559.

Appellees also point to the summary paragraph of the Legislative Service Commission, stating that H.B. No. 93:

"Clarifies that *certain child custody dispositions* made by juvenile courts or other courts are to be governed by the best interest of the children and statutory standards that are generally applicable to custody decisions." (Emphasis added.)

We find no inconsistency between our holding and this statement. Indeed H.B. No. 93 intended that the juvenile court apply the best interest test, without considering parental suitability, in "certain child custody dispositions." The phrase "certain child custody dispositions" refers to those cases certified to it pursuant to R.C. 3109.04 and 3109.06. This does not mean that the "best interest" test, absent consideration of parental suitability, is to be applied carte blanche in every case arising under R.C. 2151.23. We also note that in construing a statute, "a report of the Legislative Service Commission * * * may not be used to give a meaning to a legislative enactment other than

that which is clearly expressed." *Cleveland Trust Co. v. Eaton* (1970), 21 Ohio St.2d 129, 138, 50 O.O.2d 354, 359, 256 N.E.2d 198, 204.

In conclusion, we hold that in custody disputes between a parent and a non-parent brought pursuant to R.C. 2151.23(A)(2), the juvenile court must consider the "paramount" rights of the parent, finding the parent "unsuitable" before awarding custody to a non-parent. *Perales supra,* syllabus. A finding of unsuitability requires that a preponderance of the evidence shows that the parent abandoned the child, that the parent contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child. *Id.,* 52 Ohio St.2d at 89, 6 O.O.3d at 293, 369 N.E.2d at 1048.

Because the trial court incorrectly applied the law, making no determination as to Goll's "suitability" before awarding custody of Diana to the Reynoldses, Goll's first two assignments of error are sustained.

### Assignment of Error III

"The judgment of the trial court that the grant of custody of Diana Goll to plaintiffs-appellees is in the best interest of said child under the provisions of section 3109.04(C) then in effect is not sustained by the manifest weight of the evidence."

Having decided that the court erred in failing to make a finding that Goll is unsuitable, this case must be remanded for such an inquiry. In light of this pending determination, it would be premature for us to discuss the evidence, thereby risking a substitution of our judgment for that of the trial court. Accordingly, this assignment of error is overruled.

This case is remanded to the trial court for a new proceeding to be held consistent with our holding.

*Judgment reversed*
*and cause remanded.*

BAIRD, P.J., and CACIOPPO, J., concur.