{¶ 50} I must respectfully dissent from the majority's opinion for three reasons. First, I would find that, according to statute and case law, the trial court should have applied the statutory best interests test set forth in R.C. 3109.04 rather than the common law suitability test to this custody dispute as it stems from a divorce action initiated in domestic relations court, rather than originating in juvenile court pursuant to R.C. 2151.23. Second, I disagree with the majority's statement eroding the difference between those two tests as case law and proper statutory construction mandate some substantial difference between the two tests. Finally, I will demonstrate how, assuming arguendo the trial court was correct to apply the suitability test, the majority's application of that test conflicts with our recent decision regarding the use of a guardian ad litem report in a suitability analysis. Accordingly, I write to explain my differences with the majority's conclusions.
 {¶ 51} As a preliminary matter, I believe the majority should have exercised the Court's discretion and addressed the first issue raised in this dissent. In his assignment of error, Appellant challenges the manner in which the juvenile court applied the suitability test when determining custody between the parties. However, he never argues the juvenile court applied the wrong test when making that determination. Conversely, Appellee argues the juvenile court should have applied the best interests test, with Appellant responding to that argument in his reply brief. An appellate court always retains the discretion to decide issues not raised before the trial court. State v. Peagler (1996), 76 Ohio St.3d 496, 499,668 N.E.2d 489; App.R. 12(A)(2). Because the parties briefed this unassigned error, I would use that discretion and reverse the trial court's decision because it used the suitability test rather than the best interests test when determining who was to retain custody of the minor children.
 {¶ 52} Support for my position with regard to the appropriate test to apply is twofold. First, support can be found in a brief review of the history of the law in Ohio with regard to custody disputes between parents and non-parents. A more thorough discussion can be found at Judge Donofrio's concurring opinion in Lewis v. Lewis, 7th Dist. No. 99-JE-6, 2001-Ohio-3167. See also In re Wilson (Apr. 30, 1999), 2nd Dist. No. 98-CA-19. Second, following canons of statutory construction, the plain language of the applicable statutes dictates the correct test to apply.
 {¶ 53} It has long been the law in Ohio that a court must look to the best interests of the children when making custody determinations. See Gishwiler v. Dodez (1855), 4 Ohio St. 615, 617. In addition, Ohio law recognizes a suitable parent's right to custody of his or her minor child "is paramount to that of all other persons." Clark v. Bayer (1877),32 Ohio St. 299, paragraph one of the syllabus. Accordingly, R.C. 3109.04
formerly stated a court could only grant custody of a child to a non-parent upon a finding that neither parent was suitable. This changed in 1974 when the legislature amended R.C. 3109.04 to provide, as it does today, that a court may award custody of a minor child to a non-parent if it finds it is in the best interests of the child to do so. R.C.3109.04(D)(2).
 {¶ 54} The Ohio Supreme Court interpreted this version of R.C.3109.04 in Boyer v. Boyer (1976), 46 Ohio St.2d 83, 75 O.O.2d 156,346 N.E.2d 286. In Boyer, the mother sought custody of her minor son in a divorce action. However, the son had been living with his paternal grandparents from shortly after his birth until the divorce, when he was six years old. The domestic relations court found it was in the best interests of the child to stay with his paternal grandparents. The Ohio Supreme Court affirmed, holding that R.C. 3109.04 dictated a domestic relations court no longer needed to find a parent is unsuitable before placing that child with a non-parent.
 {¶ 55} The next year, the Ohio Supreme Court was faced with a similar situation in In re Perales (1977), 52 Ohio St.2d 89, 6 O.O.3d 293, 369 N.E.2d 1047. In Perales, the mother agreed to surrender custody of her minor daughter to a non-relative. Subsequently, she sought to regain custody under R.C. 2151.23. The juvenile court applied a best interests test and granted custody to the non-parents. The Ohio Supreme Court found the trial court erred. The Perales court, relying upon prior law, held that in custody disputes between parents and non-parents arising under R.C. 2151.23, custody disputes not related to divorce actions, the juvenile court may not award custody to the non-parent without finding the parent unsuitable. Id. at syllabus.
 {¶ 56} Some courts initially interpreted Perales to mean the suitability test must be made in all child custody disputes between parents and non-parents, regardless of in which court custody was sought. See Thrasher v. Thrasher (1981), 3 Ohio App.3d 210, 3 OBR 240,444 N.E.2d 431, syllabus. However, those courts have reconsidered that position and now find Perales was not intended to overrule Boyer. SeeReynolds v. Goll (1992), 80 Ohio App.3d 494, 609 N.E.2d 1276. In reaching that decision, the Reynolds court noted its decision in Thrasher had come under criticism. It found the position of those criticizing courts was supported by the Ohio Supreme Court's decision in Masitto v. Masitto
(1986), 22 Ohio St.3d 63, 65, 22 OBR 81, 488 N.E.2d 857, which stated the best interests test is "the sole consideration" in custody proceedings brought under R.C. 3109.04 and that the legislature enactment of the current version of R.C. 3109.04 expressed a clear intent to modify common law in divorce proceedings. Id. at 498.
 {¶ 57} I agree with Reynolds's conclusion that Perales was not intended to overrule Boyer, although for additional reasons. It is a canon of statutory construction that the General Assembly is presumed to know the common law when enacting legislation. See Walden v. State
(1989), 47 Ohio St.3d 47, 56, 547 N.E.2d 962 (Resnick, J., concurring in part and dissenting in part); State ex rel. County Bd. of Ed. of HuronCounty v. Howard (1957), 167 Ohio St. 93, 96, 4 O.O.2d 83, 146 N.E.2d 604;Davis v. Justice (1877), 31 Ohio St. 359, 364. Furthermore, it is well-established that the legislature is presumed to know the state of the law relating to the subjects with which it deals. State ex rel.Cromwell v. Myers (1947), 80 Ohio App. 357, 368, 36 O.O. 62, 73 N.E.2d 218. When applying the language of a statute, it must be construed in light of the common law in force at the time of its enactment. State ex rel.Morris v. Sullivan (1909), 81 Ohio St. 79, 95, 90 N.E. 146; R.C. 1.49(D). Accordingly, when a new statute uses different phraseology than the former law, it is presumed that a change of meaning was also intended to the extent of the change in the language since it is axiomatic in statutory construction that words are not inserted into an act without some purpose. Malone v. Indus. Comm. Of Ohio (1942), 140 Ohio St. 292,299, 23 O.O. 496, 43 N.E.2d 266; Hancock Cty. Bd. of Edn. v. Boehm
(1921), 102 Ohio St. 292, 131 N.E. 812, syllabus. A reviewing court must not supply words to a statute which were omitted by the legislature.Lynch v. Gallia Cty. Bd. of Commrs. (1997), 79 Ohio St.3d 251, 254,680 N.E.2d 1222.
 {¶ 58} When it amended R.C. 3109.04 in 1974 to say a court may award custody to a non-parent relative if it finds it is in the best interests of the child to award neither parent custody, the legislature knew that under common law custody could only be given to a non-parent if the court first found the parent unsuitable. "Best interests" and "suitability" were both concepts well established in Ohio courts prior to 1974. See Gishwiler, supra; Clark, supra. If the General Assembly had wished Ohio courts to determine whether a parent is unsuitable prior to considering the best interests of a child in custody disputes between parents and non-parents it would have said as much. Because it did not do so, this cannot be what R.C. 3109.04 was meant to say. As Reynolds
recognized:
 {¶ 59} "With the codification of the `best interest' test in 1974, the General Assembly expressed a clear intent to modify the common law and eliminate consideration of a parent's suitability in domestic relations actions. But the legislature made no comparative change in R.C. Chapter 2151. R.C. 2151.23 is a jurisdictional statute with no substantive law test." Id. at 498.
 {¶ 60} Thus, the two tests must have some substantive distinctions. It is not necessary at this time to explain those distinctions. The point is that those differences must exist.
 {¶ 61} In conclusion, both the case law and the canons of statutory construction support my conclusion that custody disputes arising under R.C. 3109.04 are resolved using the Boyer statutory best interests test while custody disputes arising out of R.C. 2151.23 are resolved using the Perales suitability test. In general, this means a domestic court uses the best interests test while a juvenile court uses the suitability test when resolving custody disputes between parents and non-parents. However, there is a statutory exception to this general rule, which is the procedural crux of this case.
 {¶ 62} On occasion, juvenile courts are asked to resolve custody disputes stemming from a divorce. A domestic relations court making or having made custody determinations in accordance with R.C. 3109.04 may certify the custody dispute to the juvenile court to resolve. R.C.3109.04(D)(2). More to the point in this case, R.C. 3109.06 provides that upon the death of the person to whom the court granted custody in a divorce proceeding, the court "may proceed to make further disposition of the case in the best interests of the children * * *." If the children are minors, the domestic relations court may certify the case to the juvenile court for any further proceedings Id., but is not required to do so. Upon certification however, the juvenile court shall make its custody determination in accordance with R.C. 3109.04 and apply the best interests test. R.C. 3104.06; In re Surdel, 9th Dist. No. 01CA007783, 2001-Ohio-1407.
 {¶ 63} This conclusion is based upon the above straightforward statutory construction and the Ohio Supreme Court's interpretation of R.C. 2151.23(F)(1) in In re Poling (1992), 64 Ohio St.3d 211,594 N.E.2d 589. In Poling, two children were born of a marriage that ended in divorce and the mother was granted custody. Sometime after, the local Children's Services agency filed a neglect and dependency action against the mother in juvenile court. As a result of that action, the children were made wards of the court and were placed in the custody of the Children's Services agency. Thereafter, upon motion by the Children's Services agency, the juvenile court granted custody to the father over the mother's objections. The question before the Ohio Supreme Court was whether the juvenile court had jurisdiction to make this ruling. Concluding the juvenile court had jurisdiction, the court also recognized that, pursuant to R.C. 2151.23(F)(1), a juvenile court which is making a custody decision stemming from a domestic relations proceeding "must comply with the strictures contained in R.C. 3109.04" and apply the best interests test. Id. at 216; see also Reynolds at 500 (R.C.2151.23(F)(1) clarifies that a juvenile court is to apply the best interests test when the case is certified to it under either R.C. 3109.04
or 3109.06). "[I]t would be incongruous to change substantive law tests in the middle of a custody determination. In those cases certified to the juvenile court, it would be required to determine custody based solely on the child's best interest." Reynolds at 500.
 {¶ 64} Thus, under circumstances such as in Reynolds and Poling, according to both R.C. 3109.06 and 2151.23(F)(1) a juvenile court is required to apply the same test the domestic court was required to apply, the best interests test. Hence, I would find in this case the juvenile court abused its discretion by applying the suitability test after the custody dispute had been certified to it by the domestic court, would reverse its decision, and would remand the case in order to give the trial court the opportunity to apply the correct test.
 {¶ 65} The only way I can explain the majority's disagreement with this conclusion is its affinity for a case recently decided by this court, but not specifically relied upon by the majority, In re Custody ofLowe, 7th Dist. No. 00 CO 62, 2002-Ohio-440.
 {¶ 66} In Lowe, two minor children were born of a marriage and the mother was named custodial parent in the divorce proceedings. The father was frequently delinquent with his support payments and the mother had problems financially supporting the two children. The paternal grandparents provided a great deal of financial support for the children after the divorce. The mother found a job in Illinois and, after obtaining the court's permission, moved the younger child to Illinois with her while the older child stayed with the grandparents in order to finish out the semester at school. Before the semester ended, the mother and the younger child moved back to Ohio and the younger child went to stay with the grandparents. The mother then began looking for a job in South Carolina. The grandparents told her they would not let her relocate the children and moved for custody. The case was certified to the juvenile court from the domestic court. The juvenile court found both the mother and the father to be unsuitable and granted custody of the children to the grandparents.
 {¶ 67} This Court found the juvenile court was correct to resolve the custody dispute using the Perales suitability test.
 {¶ 68} "Child custody disputes under Ohio law are governed by two different statutes, R.C. 2151.23 and R.C. 3109.04. These statutes have different standards for determining who should be granted custody. The trial court correctly applied R.C. 2151.23, the juvenile court statute. R.C. 2151.23 is the juvenile court statute that confers jurisdiction on the juvenile court to hear cases determining the custody of any child not a ward of another court of this state. This statute does not state a standard to determine custody. However, common law has applied the suitability test. [Perales, supra]" (Footnote omitted) Id.
 {¶ 69} However, the court ultimately reversed and remanded the case, concluding the juvenile court misapplied the Perales test by using the guardian ad litem's report, which focuses on what is in the children's best interests, as part of it's suitability analysis.
 {¶ 70} As can be plainly seen, Lowe states that once a case is certified to juvenile court, the suitability test applies merely because the case is in juvenile court. This conclusion ignores the clear mandates contained in both R.C. 3109.06 and R.C. 2151.23(F)(1) and is contrary to the Ohio Supreme Court's decision in Poling. Indeed, there is no way to reconcile Lowe with the statutes or Poling, which held a juvenile court which determines a custody dispute stemming from or ancillary to a divorce proceeding must apply the best interests test. Thus, even thoughLowe is recent case law from this district, I would overrule it and, consistent with the Ohio Supreme Court's decision in Poling, hold that where as here, child custody disputes ancillary to a divorce proceeding initiated in domestic relations court and then certified to the juvenile court under R.C. 3109.04 or 3109.06, the juvenile court shall, in accordance with R.C. 3109.04, apply the best interests test to determine custody of the children rather than the suitability test.
 {¶ 71} I must concede the majority's decision to leave this unassigned error unaddressed is, of course, discretionary. Peagler. However, I am troubled by its statement that "Ohio's courts have been reaching a general consensus that, despite the pure `best interests' language in R.C. 3109.04, some type of `parental unsuitability' test must be applied in custody disputes between a parent and a non-parent before custody may be awarded to a non-parent." It then explains what it sees as the reason for this consensus. I believe this is an incorrect statement because, as illustrated below, the cases the majority relies upon address the constitutionality of R.C. 3109.04 best interests test, not how a court is to apply that test. In addition, some of the cases the majority relies upon reach opposite conclusions. Further, in light of recent United States Supreme Court case law, there is some question as to the ongoing constitutional validity of R.C. 3109.04's best interests test. Rather than reconciling these cases and taking the time to address the constitutionality of the best interests test, the majority's statements erode the distinction between the best interests test and the suitability test, thereby finding the best interests test constitutional due to that erosion. Although I believe it is inopportune at this time to raise the constitutionality of R.C. 3109.04, I believe when this Court conducts such an analysis it should do so rigorously rather than glossing over the differences and distinctions which have arisen in the case law. The following will explain the problems with the majority's statements.
 {¶ 72} Recently, Ohio's appellate courts have been faced with the question of whether the R.C. 3109.04 best interests test is constitutional. In Baker v. Baker (1996), 113 Ohio App.3d 805,682 N.E.2d 661, cited by the majority, the appellant argued a best interests test violated his fundamental right under the United States and Ohio Constitutions to the custody of his children as against all third parties by awarding custody to a non-parent without finding that the appellant was an unfit or otherwise unsuitable parent. The Ninth District found the best interests test did not violate a parent's fundamental right to custody of his or her children.
 {¶ 73} "`It is the last criteria [sic], other unsuitability, which allows the court to balance the interests of parent and child and avoid operating under the premise criticized in Boyer * * *, that "the child's right to a suitable custodian and parental rights, when not in harmony, are competing interests, requiring that one give way to the other." (Emphasis added.) If courts dealing with the general concept of suitability measure it in terms of the harmful effect of the custody on the child, rather than in terms of society's judgment of the parent, the welfare of the child should be given the priority which is called for in the Clark opinion.' [Perales] at 98, 6 O.O.3d at 297,369 N.E.2d at 1052.
 {¶ 74} "Properly viewed, the right of a parent is not in conflict with the right of a child. It is in the best interests of a child to be in the custody of a suitable parent, and a parent is not suitable if it would not be in his or her child's best interests for him or her to have custody." Id. at 812.
 {¶ 75} It should be noted that in Comstock v. Comstock (Mar. 1, 2000), 9th Dist. No. 9 CA 007339, another case cited by the majority, the same appellate court that decided Baker was once again faced with the question of what standard should be used when determining custody issues between parents and non-parents. In that case, the Ninth District stated, "Both R.C. 3109.04 and R.C. 2151.23 provide for custody of a child to be awarded to a non-parent. In custody proceedings between a parent and a non-parent, custody may not be awarded to the non-parent without first determining that the parent is unsuitable." Id. at 2, citing Perales at the syllabus. However, Comstock never cited to Baker or attempted to explain how they are related. This statement in Comstock
gives the impression that in all custody proceedings between parents and non-parents, the court must first determine the parent is unsuitable before it may award custody to the non-parent. However, when read in conjunction with Baker, Comstock reaffirms the Baker decision that a suitability determination is inherent in the nature of a best interests analysis.
 {¶ 76} In contrast, in Esch v. Esch (Feb. 23, 2001), 2nd Dist. No. 18489, appellant made a similar challenge to the constitutionality of the best interests test. The appellate court did not adopt Baker's reasoning. Instead, it found the best interests test unconstitutional because it fails to give some credence or presumption to the parent's decisions. Relying on Troxel v. Granville (2000), 530 U.S. 57,120 S.Ct. 2054, 147 L.Ed.2d 49, the court stated, "If, simply because it disagrees with the parents as to the child's best interests, a state court granting visitation to a non-parent is unconstitutional, then a state court granting custody to a non-parent based on the same disagreement must also be unconstitutional." Id. at 4. As the court found the standard stated in the statute to be unconstitutional, it reverted back to the common law standard and found the suitability test must be applied when determining custody disputes between parents and non-parents. Id.
 {¶ 77} Without citing to Esch, this court also noted the constitutionality of R.C. 3109.04 is open to debate in light of Troxel.Lewis, supra (Donofrio, J., concurring). However, that case was not a proper case for such a determination. Id.
 {¶ 78} Contrary to the majority's assertion, these cases do not stand for the proposition that a trial court complies with R.C. 3109.04
when determining custody between parents and non-parents if it conducts a suitability analysis either before it conducts or as part of the best interests test. Rather Baker, Comstock, and Esch address whether R.C.3109.04 is constitutional due to its failure to expressly state that the trial court must consider a parent's suitability before it may turn to what is in the child's best interests and those cases come to different, opposing conclusions. The fallacy in the majority's statement is especially clear when R.C. 3109.04 is examined in light of the canons of statutory construction discussed above.
 {¶ 79} An obvious question I must answer is why, given the fact that I feel the need to address the unassigned error regarding which test is to be applied in the present case, I previously stated that I feel this to be an inopportune time to address the constitutionality of R.C.3109.04. As noted above, some Ohio courts, notably the Second District inEsch, have already found R.C. 3109.04 unconstitutional because it failed to include a parental suitability test when determining custody disputes between parents and non-parents arising in divorce proceedings. Likewise, this Court has previously noted R.C. 3109.04 is of questionable constitutionality in Lewis. However, regardless of how obvious the need for this Court to address the issue sometime in the near future, in this case neither of the parties have even mentioned the constitutionality of R.C. 3109.04 in their briefs. This is in contrast to the unassigned error I would address in this case as each party argued that issue in their briefs to this court. In addition, the Attorney General has not been given the opportunity to defend the constitutionality of R.C. 3109.04. See R.C. 2721.12(A); Cicco v. Stockmaster, 89 Ohio St.3d 95, 2000-Ohio-0434, 728 N.E.2d 1066, syllabus. Accordingly, at this time I would be hesitant to state an opinion on R.C. 3109.04's constitutional validity as the majority has done.
 {¶ 80} Finally, even if I agreed with the majority and chose not to address the unassigned error addressed above, I would disagree with the majority's conclusion. Recently, this Court dealt with a case which is procedurally indistinguishable from the case at hand. See Lowe, supra. In Lowe, the juvenile court was asked to decide a custody dispute between a parent and a non-parent. When making this determination, the juvenile court conducted a Perales suitability test while relying upon the report of a guardian ad litem. This Court found it to be reversible error for a trial court to rely upon the report of a guardian ad litem when conducting a Perales suitability analysis. Similarly, in this case the trial court conducted a Perales suitability test and relied upon a guardian ad litem's report when making its custody determination. However, in this case the majority concludes the trial court is correct for doing so, thus conflicting with Lowe.
 {¶ 81} In conclusion, I would exercise this Court's discretion to address an unassigned error as both parties were able to address the issue in their briefs to this court. I would hold that in child custody disputes between parents and non-parents arising out of a divorce and certified to the juvenile court pursuant to R.C. 3109.04 or R.C. 3109.06, the juvenile court must apply the statutory best interests test rather than the common law suitability test. I would also refuse to address the constitutionality of this requirement as neither party nor the state has been given the opportunity to attack or defend the constitutionality of R.C. 3109.04. Finally, the majority's conclusion that the trial court was correct to rely upon the report of a guardian ad litem when it made itsPerales parental suitability determination is in direct conflict withLowe which held such reliance is in error. For these reasons, I must respectfully dissent from the majority's opinion.