**TRUITT, Appellee,**

v.

**TRUITT, Appellant.**

[Cite as *Truitt v. Truitt* (1989) 65 Ohio App.3d 126.]

Court of Appeals of Ohio,
Preble County.

No. CA89–02–006.

Decided Oct. 23, 1989.

*Earley & True* and *James W. Thomas,* for appellee.

*Brannon, Hall & Tucker* and *Dwight D. Brannon,* for appellant.

---

*Per Curiam.*

This cause came on to be heard upon an appeal from the Preble County Court of Common Pleas.

Respondent-appellee, H. Steven Truitt, and petitioner-appellant, Linda L. Truitt, were married October 21, 1972. The marriage produced two children: Jason, born in 1976, and Todd, born in 1982. In July 1984, the couple obtained a dissolution decree from the Preble County Court of Common Pleas which gave appellant custody of the children. Appellee received visitation rights with which both parties complied, apparently without incident, until June 1986.

At that time, appellant noticed that Jason was behaving strangely. His repeated misbehavior was unusual. When asked for an explanation, he told his mother that his father had instructed him to misbehave, had threatened to harm appellant and her new husband, and had reprimanded and struck Todd for no apparent reason during the children's visits. Even more disturbing was Jason's account of his father's forcing him to sexually touch his step-

mother, to watch his father and stepmother engage in sexual intercourse, and to do other similar acts which, if true, would constitute sexual abuse.

Believing these allegations to be true, appellant filed a motion on July 11, 1986 in the Preble County Court of Common Pleas to terminate visitation. The trial court ordered that both children undergo psychological testing to attempt to determine whether abuse by appellee had occurred. After various psychological analyses and a hearing on the matter, the trial court issued its decision on January 15, 1987, in which it ordered both couples and both children to pursue independent counseling, with visitation to occur only with supervision. Since the various test results and even a hypnosis session with Jason failed to reveal whether the alleged sexual abuse had, in fact, occurred, the trial court did not terminate visitation at that time. The court also strongly encouraged appellant to implement visitation with the children's paternal grandparents.

The parties entered into counseling with a psychologist who attempted unsuccessfully to help the parents deal with the bitterness surrounding the divorce and the alleged incidence of abuse, while also attempting to assist the children in dealing with the emotional stress they were experiencing. Appellant did not heed the court's instruction with regard to grandparent visitation, and on March 23, 1988, the court ordered monthly visitation with the grandparents.

The first meeting with the grandparents went well; however, subsequent visits were either cancelled due to the children's Little League baseball schedule and other family time conflicts, or went poorly due to the children's reluctance to visit. The children's aversion to visiting the grandparents culminated in their frantic "escape" during the last visit, when they ran down the street and had to be pursued by the grandparents who then took them home.

On December 12, 1988, the trial court held a hearing on the matter in which the grandparents, appellee and appellant gave testimony regarding the failure of family therapy and the grandparent visitation order. In its January 31, 1989 decision, the trial court found appellant in contempt for her failure to comply with its court order regarding grandparent visitation and ordered that the children be placed in the custody of Preble County Children's Services until such time as appellant would "encourage visits with the grandparents." [1]

Appellant then filed this appeal May 31, 1989, obtaining a stay of execution

---

1. Appellant had testified that because she believed the grandparents, like appellee, were mistreating the children, she could not encourage the children to visit but was merely complying with the court order when the visits actually did occur.

of the court's order pending adjudication of the appeal.[2]

Appellant raises the following as error:

ASSIGNMENT OF ERROR NO. 1:

"The court of common pleas erred by failing to act in the best interest of the children."

ASSIGNMENT OF ERROR NO. 2:

"Custody of children may not be changed as a sanction for contempt of court by a parent in regards to a grandparent visitation."

ASSIGNMENT OF ERROR NO. 3:

"The lower court erred in that it failed to appoint a guardian ad litem to represent the interests of the children."

ASSIGNMENT OF ERROR NO. 4:

"The lower court does not have the authority to change custody of the children unless and until it makes a finding that the parents are unsuitable."

ASSIGNMENT OF ERROR NO. 5:

"The lower court did not have the discretion to change the custody of the minor children."

In her first assignment of error, appellant alleges that the trial court failed to act in the best interest of the children in violation of R.C. 3109.04(C). That statute reads:

"(C) In determining the best interest of a child pursuant to this section, whether on an original award of custody or modification of custody, the court shall consider all relevant factors, including:

"(1) The wishes of the child's parents regarding his custody:

"(2) The wishes of the child regarding his custody if he is eleven years of age or older;

"(3) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;

---

**2.** Appellee has not filed a brief in this matter. His parents are not parties to the action, which arises out of the continuing jurisdiction rule of Civ.R. 75(I) since it originated with appellant's motion to terminate visitation. Appellee's parents never filed a motion or suggestion requesting visitation rights—the court granted visitation *sua sponte.* The Ohio Supreme Court has not addressed whether grandparent visitation rights may be awarded on the trial court's own motion; however, authority for the idea that the court's continuing jurisdiction may be invoked *sua sponte* to provide visitation may be found in *Hutton v. Hutton* (1984), 21 Ohio App.3d 26, 28, 21 OBR 28, 29–30, 486 N.E.2d 129, 131, relying upon *Cooper v. Cooper* (1983), 10 Ohio App.3d 143, 145, 10 OBR 194, 196, 460 N.E.2d 1137, 1140–1141. We decline to address the validity of *sua sponte* visitation awards here because we find that issue to be collateral under these facts.

"(4) The child's adjustment to his home, school, and community;

"(5) The mental and physical health of all persons involved in the situation."

In her fourth assignment of error, appellant argues that the trial court abused its discretion in changing the custody of the children absent a finding that appellant was an unsuitable parent. Because we find appellant's first and fourth assignments of error to be interrelated, we will combine them for the purposes of this appeal.

A court may not award custody to a nonparent absent a finding that the custodial parent is unsuitable. *In re Perales* (1977), 52 Ohio St.2d 89, 98, 6 O.O.3d 293, 297, 369 N.E.2d 1047, 1052. In that case, the Ohio Supreme Court addressed a juvenile court child custody dispute between the child's mother and a nonparent third party to whom she had given custody. The mother argued that the court below had improperly applied the "best interest" test of R.C. 3109.04 in deciding that the child must remain with the third party without a finding of parental unsuitability. The court agreed with the mother on the basis that R.C. 3109.04 deals with custody disputes in the context of a divorce action where the needs of the child are at issue and generally both parents are suitable. *Id.* at 96, 6 O.O.3d at 296, 369 N.E.2d at 1051. The *Perales* situation, by contrast, involved a custody dispute between parent and nonparent—invoking the parent's paramount interest in custody. *Id.* at 98, 6 O.O.3d at 297, 369 N.E.2d at 1052. The court ultimately held that unless it is shown that a parent should forfeit the right to custody due to abandonment, abuse, or other evidence of unsuitability, the parent was entitled to custody of the child. *Id.*

Although the case *sub judice* is styled *Truitt v. Truitt*, by transferring custody to a nonparent party the trial court has created a situation similar to that in *Perales*, where the custodial choice is not between parents but between a parent and children's services. That being the case, the trial court would have to find that the custodial parent was unsuited to raise her children in addition to finding that it would be in the best interest of the children to be sent away from their mother.[3] We find no evidence that appellant was an unsuitable mother.

---

3. In *Masitto v. Masitto* (1986), 22 Ohio St.3d 63, 22 OBR 81, 488 N.E.2d 857, the Ohio Supreme Court held that, by consenting to the relinquishment of custodial rights, the parent forfeited his natural custodial rights, "making the child's best interest the appropriate test for a change in custody." *Id.* at 66, 22 OBR at 83, 488 N.E.2d at 860. We distinguish *Masitto* on the grounds that here appellant did not by any means consent to relinquishment of custodial rights. Without such consent, her interest in custody remained paramount, and it was imperative that the trial court make a finding of unsuitability before removing custody.

Neither can we say that the trial court properly based its decision on the best interest of the children. The ongoing tension between the parties clearly created conflict for the children, but there is no evidence that the relationship between the children and appellant was harmful to the extent that their interest would be better served by removing them from the home.

Appellant may have been bitter and uncooperative with regard to the grandparent visitation order, but this does not justify terminating her custody. Appellant's faults, indeed the faults of all the parties involved, may have stymied the court's efforts to resolve this visitation dispute, but those faults are not a basis for placing the children in the custody of children's services. As the Pickaway County Court of Appeals has stated:

"Too long have courts labored under the notion that divorced parents must somehow be perfect in every respect. The law should recognize that parents, married or not, are individual human beings each with his or her own particular virtues and vices. The children of married parents are expected to take their parents as they find them—as Oliver Cromwell said to his portraitist, 'with warts and all.' Whatever their faults, unless the married parent's conduct is harming the child, the courts will not intervene in the parent-child relationship.

"In divorce cases, however, the court has no choice but to intervene to establish custody and visitation. Nonetheless, the same standard should be used. In domestic relations cases the court should recognize that all parents have faults, and look not to the faults of the parents but to the needs of the child." *Conkel v. Conkel* (1987), 31 Ohio App.3d 169, 171–172, 31 OBR 335, 337, 509 N.E.2d 983, 985–986.

We find it was error for the trial court to fail to consider the best interest of the children and to place them in the custody of children's services without a finding of unsuitability. We therefore sustain appellant's first and fourth assignments of error.

Appellant's second assignment of error asserts that custody may not be changed as a sanction for contempt of court. We agree.

The trial court clearly has authority to impose sanctions for the action or inaction of a party which results in a finding of contempt. *Zakany v. Zakany* (1984), 9 Ohio St.3d 192, 193–194, 9 OBR 505, 506–507, 459 N.E.2d 870, 872–873. Moreover, the trial court may find a custodial parent in contempt for failure to comply with court-ordered visitation with the non-custodial parent. *Smith v. Smith* (1980), 70 Ohio App.2d 87, 90, 24 O.O.3d 100, 102, 434 N.E.2d 749, 752. In that case, the Franklin County Court of Appeals held that until a child reaches the age where he can "affirmatively and independently" deter-

mine that he does not wish to have visitation with the noncustodial parent, the custodial parent should follow the court order to allow visitation. *Id.* We see no reason why this rule may not also apply to grandparents and others to whom the court has provided visitation rights.

Thus, if the trial court had determined that Jason and Todd were incapable of affirmatively and independently deciding not to have visitation with their grandparents, it was within the discretion of the trial court to find appellant in contempt for noncompliance with its order. *Id.*

■ However, the trial court did not have the authority to modify or change custody of the children based upon appellant's failure to encourage or implement regular visitation. *Culberson v. Culberson* (1978), 60 Ohio App.2d 304, 306, 14 O.O.3d 265, 267, 397 N.E.2d 1226, 1228 ("the children of a dissolved marriage are not pawns whose custody may be used for the punishment of a wrongdoer"); cf. *Andrulis v. Andrulis* (1985), 26 Ohio App.3d 164, 166, 26 OBR 383, 384, 498 N.E.2d 1380, 1381–1382 (court's modification of visitation and support orders exceeded the authority of the court for punishment and contempt). Other penalties for contempt could have been imposed by the trial court in this case with the potential result of securing compliance with the court order.[4] We find it was unconscionable to award custody of the children to the county as punishment for contempt and so sustain appellant's second assignment of error.

■ Appellant next argues that the trial court was required under R.C. 2151.281(B)(1) to appoint a guardian *ad litem* in this action. That section reads:

"The court shall appoint a guardian *ad litem* to protect the interest of a child in any proceeding concerning an alleged abused or neglected child, and in any proceeding held pursuant to section 2151.414 of the Revised Code. The guardian *ad litem* so appointed shall not be the attorney responsible for presenting the evidence alleging that the child is an abused or neglected child and shall not be an employee of any party in the proceeding."

The trial court did not have jurisdiction to find child abuse in this case except insofar as it related to the modification of the visitation order.[5] R.C.

---

4. Additionally, other remedies besides contempt could have been imposed in order to resolve the interfamilial dissension in this case, including appointment of a mediator. See Haynes, The Use of Mediation in Grandparent Visitation Disputes, ABA, Grandparent Visitation Disputes: A Legal Resource Manual (1989) 79.

5. R.C. 2151.23 provides, in part:
   "(A) The juvenile court has *exclusive original jurisdiction* under the Revised Code:

2151.281 contemplates a case where the county children's services agency or other party files a complaint against the parent, alleging child abuse or neglect. See *In re Uhl* (Aug. 21, 1984), Warren App. No. CA84–03–018, unreported, 1984 WL 3412. Here the matter arose on a motion to terminate visitation on the grounds that appellee had abused the children. For all purposes, the matter remained a domestic relations dispute and children's services was never a party to the litigation. No abuse charges were ever filed against appellee. Since this is not a child abuse proceeding in a juvenile court, we decline to follow appellant's view that the trial court was required to appoint a guardian *ad litem.*

Instead, we find the appointment of a guardian *ad litem* was discretionary under Civ.R. 75(B)(2) and believe it was not an abuse of discretion for the trial court to fail to appoint a representative for the children. *Stone v. Stone* (1983), 9 Ohio App.3d 6, 11–12, 9 OBR 6, 11–12, 457 N.E.2d 919, 924–925. Thus, appellant's third assignment of error is overruled.

■ Appellant's fifth assignment of error alleges that the trial court did not have the discretion to change the custody order unless it found a change in conditions. The relevant statute for this principle is R.C. 3109.04(B)(1), which reads, in part:

" * * * the court shall not modify a prior custody decree unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, his custodian, or either joint custodian, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the custodian * * * designated by the prior decree, unless one of the following applies:

"(a) The custodian or both joint custodians agree to a change in custody.

"(b) The child, with the consent of the custodian or of both joint custodians, has been integrated into the family of the person seeking custody.

"(c) The child's present environment endangers significantly his physical health or his mental, moral, or emotional development and the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."

We cannot say that, even if the trial court had the authority to transfer custody to children's services without a finding of unsuitability, the placement of the children outside the home would meet the requirement of subpart (c) of

---

"(1) Concerning any child who on or about the date specified in the complaint is alleged to be a juvenile traffic offender, or a delinquent, unruly, *abused,* neglected, or dependent child[.]" (Emphasis added.)

this statute that "the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment of the child."

The record in this case reveals two troubled and confused children who need stability in their lives. We cannot see how removing them from their mother and placing them in the custody of strangers would assist in their emotional recovery or assure that their best interest would be served.

What removing them from the home would do—and this was the trial court's stated intent—would be to punish their mother for failing to actively encourage a positive relationship between the children and their paternal grandparents. We cannot allow the children to be so used as a vehicle for punishing appellant and so agree with appellant that the trial court lacked discretion under R.C. 3109.04 to transfer custody to children's services.

Because we find that it was error for the trial court to transfer custody to the Preble County Children's Services Agency, we sustain appellant's first, second, fourth and fifth assignments of error.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, reversed, and this cause is remanded for further proceedings according to law and not inconsistent with this decision.

*Judgment reversed*
*and cause remanded.*

JONES, P.J., KOEHLER and WILLIAM W. YOUNG, JJ., concur.