**MARSHALL, Appellee,**

v.

**MARSHALL, Appellant.**

[Cite as *Marshall v. Marshall* (1997), 117 Ohio App.3d 182.]

Court of Appeals of Ohio,
Third District, Allen County.

No. CA96 05 0033.

Decided Jan. 15, 1997.

Robert J. Honigford, for appellant.

*Andrew B. King,* for appellee.

---

*Per Curiam.*

This is an appeal from a judgment of the Allen County Court of Common Pleas, Domestic Relations Division, which granted the parties a divorce, divided the marital property, granted custody of the two children to appellee, Adolph K. Marshall ("Adolph"), and ordered appellant, Brigitte O. Marshall, ("Brigitte"), to pay child support and provide all transportation for visitation. Brigitte sets forth the following two assignments of error:

"I. The trial court's decision granting custody of the parties' two children to appellee is not supported by the evidence, and constitutes an abuse of the court's discretion.

"II. The trial court abused its discretion in ordering appellant to be totally responsible for transportation costs when exercising visitation with the children."

The following facts are relevant to this appeal. The parties were married on May 9, 1987. Two children were born as issue of the marriage: Adolph K. Marshall, Jr., (d.o.b. November 6, 1987) and Hosannah Marshall (d.o.b. June 23, 1990).

On September 7, 1995, Adolph filed a complaint for a legal separation. Brigitte filed an answer and counterclaim for a divorce on October 12, 1995. Adolph's complaint for a legal separation was subsequently amended to a complaint for a divorce.

Following a pretrial hearing on October 30, 1995, the trial court granted temporary custody of the children to Brigitte and ordered her to return from North Carolina to Lima, Ohio, with the minor children on or before November 10, 1995. On November 17, 1995, the trial court denied a motion for reconsideration of these temporary orders.

A hearing was held on January 30, 1996, and the judgment entry from which this appeal arises was journalized on May 2, 1996. This appeal was timely filed.

The evidence at the hearing was as follows. Brigitte, a native of a small island south of Guam, testified that she left Lima, Ohio, with the children in March 1995 to live near her sister in North Carolina. Her sister is one of her few relatives who live in the United States. Brigitte testified that Adolph physically abused her during the marriage. Adolph admitted that he recalled at least five times that he physically abused Brigitte. Adolph testified that there were times when he "lost his temper and physically abused" Brigitte. He also admitted that there were verbal "altercations." Adolph admitted that Brigitte

left because of the abuse. Brigitte testified that the abuse occurred in front of the children.

Brigitte testified that she was the primary caregiver for the children during the marriage. Adolph testified that he worked 10:30 p.m. to 7:00 a.m., leaving the house between 8:30 and 9:00 p.m. for work. He admitted that he frequently worked overtime and weekends and would be awake and at home only five to six hours on a regular daily basis. He testified that his mother, who worked days, would care for the children when he was at work. Adolph admitted that he and his mother have had problems "getting along." Adolph's mother testified that they had not spoken to each other for three to four years. Brigitte testified that she took the children to visit Adolph's mother even though Adolph did not allow this. Brigitte also testified that Adolph would not allow his mother to come to their house. Brigitte testified that Adolph's mother gave the children bikes one Christmas but Adolph took the bikes and threw them into his mother's yard.

Adolph admitted that although he was entitled to vacation time from work, he did not take any time to go to North Carolina to visit his children during the approximately eleven months they lived there. In an affidavit, Brigitte affirmed that the children were available to Adolph for visitation during summer vacation as well as Thanksgiving and Christmas. She also stated that she had always provided her address and telephone number to Adolph.

In its decision granting Adolph custody of the children, the trial court noted that Adolph's conduct in striking Brigitte "on approximately five occasions * * * could result in the finding of the commission of an offense of Domestic Violence." The trial court then focused on the fact that Brigitte left the state and had not returned to Lima, Ohio, as ordered by the court. The court stated:

"This must be considered by the Court when examining the likelihood of each of the parties to honor and facilitate visitation. Also, the mere fact of the Defendant leaving the area in the manner in which she did impacts on the Courts [sic] Decision and this Court would find that the Plaintiff would be more likely to honor and facilitate those rights."

The trial court also stated:

"The Plaintiff has not received visitation with the children in this matter *because of the Defendant leaving the area and relocating to North Carolina.*" (Emphasis added.)

Finally the trial court stated:

"[T]he Defendant's defiance of the previous Order of the Court leads this Court to believe that she would not honor such orders in the future and would place in jeopardy the relationship between the Plaintiff and the children."

A judgment relating to child custody will not be reversed by the reviewing court as being against the manifest weight of the evidence when it is supported by a substantial amount of credible and competent evidence. *Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 550 N.E.2d 178, syllabus. Courts have discretion in matters of child custody in accord with the elements, standards, and factors of R.C. 3109.04, which focus on the best interests of the child. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142. As stated in 5 Ohio Jurisprudence 3d (1978) 163, Appellate Review, Section 590:

"It is difficult to define exactly what is meant by 'abuse of discretion,' and practically impossible to lay down any general rule as to what it consists of, since it depends upon the facts in each particular case. * * * But whatever the term implies, one of the essentials, in order for the action of the court below to constitute reversible error, is that its action must plainly appear to effect an injustice to one of the parties."

After a thorough review of the record in this case, this court finds that the trial court abused its discretion in awarding custody of the minor children to Adolph.

In making its decision in regard to custody, the trial court placed undue emphasis on the fact that Brigitte left Ohio and failed to return. The trial court's decision appears to be an attempt to hold Brigitte in contempt for her failure to abide by the prior court order to return to Ohio.

A court may hold a party in contempt for failure or refusal to comply with its orders and may impose such penalties as are reasonable and just. R.C. 2705.02(A). However, a trial court does not have the authority to modify or change custody of the children based upon appellant's failure to encourage or implement regular visitation. *Culberson v. Culberson* (1978), 60 Ohio App.2d 304, 306, 14 O.O.3d 265, 267, 397 N.E.2d 1226, 1228 ("the children of a dissolved marriage are not pawns whose custody may be used for the punishment of a wrongdoer"); *Andrulis v. Andrulis* (1985), 26 Ohio App.3d 164, 166, 26 OBR 383, 384–385, 498 N.E.2d 1380, 1381–1382 (court's modification of visitation and support orders exceeded the authority of the court for punishment and contempt). Other penalties for contempt could have been imposed by the trial court in this case with the potential result of securing compliance with the court order. In *Truitt v. Truitt* (1989), 65 Ohio App.3d 126, 132, 583 N.E.2d 331, 335–336, the court found it unconscionable to award custody of the children to the county as punishment for contempt. Although the case *sub judice* involves an initial custody decision and not a post-decree modification, Brigitte had actual physical custody of the children for approximately eleven months, and it is not difficult "to

view the trial court's decision as a modification of the *status quo* and to analogize this situation to a custody modification." *Rowe v. Franklin* (1995), 105 Ohio App.3d 176, 180, 663 N.E.2d 955, 957.

In making its decision in regard to custody, the trial court placed undue emphasis on the fact that Brigitte left Ohio and established a residence out of state. Citing Annotation (1951), 15 A.L.R.2d 432, 439, the court in *In re Marriage of Barber* (1983), 8 Ohio App.3d 372, 375, 8 OBR 485, 488, 457 N.E.2d 360, 363, noted:

"The overwhelming weight of authority is to the effect that a nonresident or one who intends to become a nonresident will not be deprived of the right to the custody of a child merely because of his nonresidence; and that if the best interests of the child will be promoted, custody will be awarded to nonresidents, the same as it would be to residents; one intending to become a nonresident will be permitted to remove the child to his or her new residence. It is so held whether the question arises from the original award of custody or subsequently by way of modification of the decree so as to permit removal of the child by the person becoming a nonresident."

This case can be distinguished from *In re Markham* (1990), 70 Ohio App.3d 841, 844, 592 N.E.2d 896, 899, in which the court stated:

"What we have here is a kidnapping. Markham took [the children] to Florida on vacation. When it became apparent that his relationship with Janalee Stock was over, Markham abandoned his Meigs County home and established residence in Florida. He refused to let the children return to Ohio, and refused to let Stock see her children or even, at times, speak with them on the telephone. Markham then systematically began to create a 'normalized,' acceptable lifestyle for [the children] in Florida in order to elicit favorable testimony should the matter ever come to a hearing on the issue of custody."

The father in *Markham* rarely spent quality time with his children during the relationship, and his only reason for remaining in Florida was to deny the mother contact with the children. In contrast, Brigitte was the primary caregiver in the relationship. She left the marital home because of spousal abuse and went to live in North Carolina near her sister, one of her few relatives who live in this country. Brigitte did not secret the children from Adolph; rather, she provided an address and telephone number to him. Brigitte did not thwart any efforts at visitation. A trial court may consider nonresidence in determining the best interests of the child, R.C. 3109.04(F)(1)(j), but nonresidence alone should not deprive a parent of custody. *In re Marriage of Barber*, 8 Ohio App.3d at 375, 8 OBR at 488, 457 N.E.2d at 363–364; *Rowe v. Franklin*, 105 Ohio App.3d at 184, 663 N.E.2d at 960.

Additionally, the trial court attributed Adolph's lack of visitation to Brigitte when the testimony was that Adolph *elected* not to visit even though he had vacation time and Brigitte had not opposed visitation. There was no testimony that Brigitte had thwarted any attempts by Adolph to visit the children. The evidence was that Brigitte did not secret the children from Adolph; rather, she provided an address and telephone number to him.

■ Finally, the trial court gave little or no consideration to the fact that Brigitte was the primary caregiver. There is no question that Ohio courts must give due consideration to which parent was the primary caregiver in fashioning a custody award. *Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 23, 550 N.E.2d 178, 180. Ohio courts have long considered the primary caregiver doctrine as one of those unenumerated factors to be considered in entering a custody order pursuant to statute. See *Seibert v. Seibert* (1990), 66 Ohio App.3d 342, 345, 584 N.E.2d 41, 43; *In re Maxwell* (1982), 8 Ohio App.3d 302, 304–306, 8 OBR 409, 411–414, 456 N.E.2d 1218, 1220–1222; *Thompson v. Thompson* (1987), 31 Ohio App.3d 254, 255–257, 31 OBR 538, 539–542, 511 N.E.2d 412, 413–415.

Accordingly, appellant's first assignment of error is found well taken.

In her second assignment of error, Brigitte argues that the trial court abused its discretion in assigning all transportation costs during visitation to her. Due to our decision as to the first assignment of error, this court need not address the merits of Brigitte's second assignment of error. Accordingly, appellant's second assignment of error is found moot.

On consideration whereof, the decision of the Allen County Court of Common Pleas, Domestic Relations Division, is reversed. This case is remanded to the trial court with instructions to award custody of the children to appellant. Court costs of this appeal are assessed to appellee.

*Judgment reversed*
*and cause remanded.*

HANDWORK, MELVIN L. RESNICK and SHERCK, JJ., concur.

PETER M. HANDWORK, MELVIN L. RESNICK, and JAMES R. SHERCK, JJ., of the Sixth Appellate District, sitting by assignment.