DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant Lorain County Children Services ("LCCS") timely appeals the order of Lorain County Court of Common Pleas Juvenile Division, which awarded appellant temporary custody of Ashley Surdel, Ambrosia Surdel and Mallory Surdel, the minor children of John and Laurie Surdel, thus removing the children temporarily from the custody of their mother. We reverse the order of the lower court.
 I.
On December 11, 1996, John and Laurie Surdel agreed to a Judgment Entry Decree of Divorce in Lorain County Domestic Relations Court. The breakdown of the marriage was due in part to Mrs. Surdel's (hereinafter "mother") allegations of behavior by Mr. Surdel (hereinafter "father") involving the three daughters. The allegations, if proven, would constitute sexual abuse. Charges of sexual abuse already had been brought against father who was indicted in January 1994; he was acquitted at trial in February 1994. In December 1996, the domestic relations court gave mother permanent custody of the children. Father was not given visitation rights, but he later petitioned the court for visitation rights.
In February 1997, the domestic relations court ordered the children to be evaluated by a psychologist, who filed a report with the court in April 1997. The psychologist's report cast doubt on the allegations of sexual abuse, and attributed the girls' problematic behavior to mother's frequent reiteration of the sexual abuse allegations with the girls. The court then ordered mother to present the girls for a two-hour visitation with father, to be supervised by the same psychologist. On June 3, 1997, the court appointed a guardian ad litem for the children at mother's request, and mother was ordered to comply with a visitation on June 6, 1997, which she failed to do. She was held in contempt, but as late as February 1998, she was allowed to purge her contempt charge by cooperating with the original visitation order. Again, the court permitted several postponements, but mother failed ultimately to cooperate and the court held a contempt hearing on June 1, 1998.
Mother did not attend the contempt hearing. Her attorney who was present (and who, at the hearing, unsuccessfully attempted to withdraw as mother's counsel) informed the court that he did not know mother's whereabouts. At the hearing, as journalized on June 4, 1998, the court made certain findings of fact and adjudications, as follows. Mother was found to be an unfit parent because of her contempt of court. Father was deemed to be an unsuitable parent because he has had no contact with the children for five years. The children were adjudged "neglected children" as defined by R.C. 2151.03. The court ordered mother to be arrested and taken to Lorain County Correctional Facility to serve the three days incarceration for her failure to purge the contempt charge. The court further ordered LCCS to take temporary custody of the three children, purportedly because mother would be unable to care for the children while she served the three-day jail term. However, the court ordered LCCS to keep the children until such time as mother complied with the visitation order. (Once these matters were certified to and accepted by the juvenile court, three case numbers were assigned, one for each child. The proceedings and findings are identical for each child, thus we will refer to all three cases as though they were one.)
In its July 21, 1998 journal entry, the juvenile court adopted the findings of the domestic relations court[1], found both parents to be currently unsuitable to care for their children or to be the legal custodians thereof. The juvenile court then made a finding of facts (discussed below) and granted emergency temporary custody to appellant LCCS. LCCS had no contact with the family prior to the July 21 court order. LCCS filed a notice of appeal on July 31. As of the filing of its brief with this court on September 8, appellant had not yet located mother or the children.
 II.
Before we address the merits of appellant's assignments of error, we must address the preliminary issue of whether appellant has the right to appeal the order of the court below. Father, as appellee in this case, argues that the domestic relations court's temporary assignment of custody to LCCS is not a final appealable order. Appellee states that the assignment of temporary custody arises from the underlying divorce case, which is a "special proceeding" within the meaning of the statute defining a final order, R.C. 2505.02(B). The statute specifies that in special proceedings a final order is one "that affects a substantial right." R.C. 2505.02(B)(2). Appellee avers that the order affects no substantial right of appellant, therefore appellant has no standing to appeal.
LCCS does not appeal from the order of the domestic relations court; it appeals from the order of the juvenile court. It does not appear that LCCS had any knowledge of the domestic relations court order prior to its being served with notice of the juvenile court order. At any rate, once the domestic relations court certified these matters to juvenile court, the domestic relations court no longer had jurisdiction. R.C. 3109.06; R.C.2151.23(A)(1); and R.C. 2151.23(D). Therefore, appellee's contention that the appeal is from a "special proceeding" is inapposite.
The issue of whether the juvenile court order is final and appealable is clouded by the manner in which that court proceeded. The journal entry from the juvenile court indicates that it awarded "emergency temporary custody" of the children to LCCS. Temporary custody issued pursuant to Juv.R. 13 or 29 is not a dispositional order under Juv.R. 34, and as such is not a final appealable order. A temporary order "pending hearing on a complaint" (Juv.R. 13) has built-in due process, in that a probable cause hearing must be held within seventy-two hours after the order is made. However, courts have held that "a further dispositional order, continuing an original temporary custody order pursuant to Juv.R. 34, constitutes a final appealable order." In re Patterson (1984), 16 Ohio App.3d 214, 215.
The juvenile court in the instant case issued an order which claims to award "emergency temporary custody" but which appears to be, at minimum, an adjudication of neglect. Such an adjudication is appealable. A final order of a juvenile court "including the finding, order, or judgment of a juvenile court that a child is a delinquent, neglected, abused or dependent child" is subject to appeal. R.C. 2501.02. As explained by Kurtz and Giannelli,
 [I]t is not necessary that the dispositional order be final in all respects in order to permit appeal. The Ohio Supreme Court has determined that "the question of whether an order is final and appealable turns on the effect which the order has on the pending action rather than the name attached to it, or its general nature." [In re Murray (1990), 52 Ohio St.3d 155, 157.] Thus, an adjudication that a child is neglected or dependent followed by a disposition awarding temporary custody to a public children services agency pursuant to RC 2151.353(A)(2) constitutes a final appealable order. [Id.] Even though the temporary custody order is subject to further review [See R.C. 2151.353(A)(2)], it could continue for an indefinite period of time, thereby depriving the parents of a means to regain custody. [Citation omitted.] For the same reasons, a later modification or continuation of a temporary custody order is also a final appealable order.
Kurtz and Giannelli, Ohio Juvenile Law (1995 Edition) 289, Section 8.02(B). The courts below together conflated several procedural steps into one "order." We will address these procedural problems and how they affect the right of LCCS to appeal.
The June 4, 1998 journal entry of the domestic relations court includes a certification to the juvenile court of the matter of allocation of parental rights and responsibilities, for an order placing the children in the temporary custody of LCCS.[2] The juvenile court, by way of its July 21, 1998 order[3] adopted the findings of the domestic relations court. The juvenile court may accept the domestic relations court's certification of the allocation of parental rights and responsibilities; and, where the certifying court has made a finding of parental unfitness, the juvenile court must accept the certification.[4] However, once the juvenile court accepts certification, the finding of the domestic relations court becomes a "complaint" or "motion" asking for an allocation of custody. Juv.R. 10 (A); R.C. 2151.23(C); and In re Height, supra. Once the juvenile court accepted certification, it had exclusive jurisdiction in the matter of the allocation of parental rights; the juvenile court, in exercising that jurisdiction, was obliged to apply the provisions of R.C. 3109.04 in allocating custody.
The Ohio Revised Code permits the juvenile court, "pending hearing of a complaint," to order ex parte emergency temporary custody, on its own motion or a motion filed pursuant to R.C.2151.33 where the court deems emergency custody necessary and appropriate. However, such an award of temporary emergency custody must be followed by procedures designed to protect the interests of the children and the rights of parents to the care and custody of their own children. The court must hold a probable cause hearing no later than seventy-two hours after the initial emergency temporary order is issued, to determine if there is indeed probable cause to believe that the child is neglected, abused or dependent. R.C. 2151.33(D). The court must give written notice to all parties that a hearing on temporary custody will be held. Id.
The juvenile court did not do this. Rather, in its July 21, 1998 journal entry, the juvenile court accepted as whole cloth the findings of the domestic relations court. Unfortunately, those findings were flawed because the domestic relations court was acting beyond the scope of its power in the matter before it at the June 1 hearing. That hearing was intended to deal only with this issue of mother's contempt of the visitation order, but it became, at the court's directive, an ad hoc adjudicatory hearing on child neglect and a dispositional hearing on custody. Such a hearing, without notice to the parties and an opportunity for them to be heard, can produce only flawed "findings."
When the juvenile court adopted the "findings" of the prior court regarding the adjudication of neglect and the order for temporary custody, it created several problems. First, it treated the domestic relations court's "complaint" for temporary custody as an order for custody. It also treated the "complaint" of neglect (which was not properly certified to the juvenile court at any rate) as an adjudication of neglect. This gave the July 21 journal entry for "emergency temporary custody" the appearance of a final appealable order both as to the issue of custody and as to the adjudication of neglect. There is nothing in the docket journals for these cases indicating that the juvenile court intended to consider at some future point any evidence presented by or on behalf of mother. If the juvenile court's order of July 21 was held to be "temporary" and non-appealable, neither mother nor the children (through their guardian ad litem) would have the opportunity be heard by the juvenile court, as is required by R.C.2151.33 and R.C. 3109.23(A).
Because the juvenile court proceeded as if it had the authority on July 21 to make an adjudication of neglect and to grant temporary custody to appellant, we have no choice but to consider the order final and appealable, as it affects a substantial right of mother and of the children.
Now we address the question of whether appellant has a right to appeal the lower court's order. It is well-settled law that only parties to the cause below have the right to appeal the trial court's decision. Whiteside, Ohio Appellate Practice (1996 Edition) 30, Section 1.27. Appellee would urge us to dismiss this appeal on the grounds that appellant has no standing to appeal, since LCCS was not a party in the domestic relations case. LCCS was not a party to the divorce proceedings. However, when the juvenile court accepted certification of the allocation of parental rights and responsibility, it chose to make LCCS a party by making it custodian for the children.
Juv.R. 2(X) states, "`Party' means a child who is the subject of a juvenile court proceeding, * * * the child's parent or parents, * * * in appropriate cases, the child's custodian, guardian, or guardian ad litem, the state, and any other person specifically designated by the court." Juv.R. 2(G) defines custodian as "a person who has legal custody of a child or a public children services agency * * * that has permanent, temporary, or legal custody of a child." Notice of the juvenile court adjudication and order was served on appellant, who was then compelled to comply with the order or be in contempt thereof.
The question of whether or not a children services agency is a party in the underlying case turns on the point at which the agency entered the case below. One appellate court held that an agency which was given temporary custody of a child who had already been adjudicated "unruly" had no standing to appeal that adjudication because it was not a party to the action until after the adjudication was made. In re Blakey (1989), 65 Ohio App.3d 341,342. However, where a children services agency acquired temporary custody before the dispositional hearing, the agency was deemed to be a party to the action, entitled to attend the dispositional hearing. In re Lawson (1994), 98 Ohio App.3d 456. ("[The agency] was granted temporary custody and was the juvenile's custodian at the [time of the dispositional] hearing. As such, [the agency] was a party to the action entitled to appear at the hearing through counsel if it chose to do so." Id. at 465.)
In another case where the children services agency had temporary custody until the court returned custody to the parents, the appeals court found that the agency did have standing to appeal the termination of temporary custody. In re Collier
(February 4, 1992), Athens App. No. CA-1494, unreported. TheCollier court looked to the statutory mandate for children services agencies and the use the juvenile court made of those services in that case and found that the appellant agency had
 * * * a present interest in the subject matter of an action brought pursuant to, and in discharge of, its statutory powers and duties. As the judgment herein thwarted appellant in the exercise and discharge of its powers and duties, it has demonstrated prejudice as a result of that judgment. Accordingly, appellant has standing to bring this appeal.
Id. In the Collier case, the children services agency brought a complaint of neglect and dependency in reference to three children and was awarded temporary custody by the court. Although it was well within the discretion of the juvenile court to terminate that temporary custody, the appellate court held that the agency had an interest, mandated by law, to ensure its care and services are exercised on behalf of children it deems in need of that care. The trial court's determination that such care was no longer needed did not nullify the agency's standing as a party to appeal the court's decision. In dicta, the Collier court said that even if "[the agency, as temporary custodian] had lost at the adjudicatory stage, we would still find that it had standing to appeal." (Emphasis sic.) Id.
If the juvenile court below had followed the provisions of R.C. 2151.33 and Juv.R. 13, it would have awarded emergency temporary custody to LCCS. Then the court would have held an adjudicatory hearing within seventy-two hours of its order. LCCS, the parents, and the children by representation would have been allowed to provide the court with facts necessary to make a proper adjudication regarding the children's current status. After the adjudicatory hearing, the parties, including LCCS (even under theBlakey standard) would have been parties to the dispositional hearing and thus would have standing to appeal the court's decision. We see no reason to decide that a person who would be a party in the ordinary course is not a party because of procedural errors by the lower court.
We hold, therefore, that the juvenile court order which granted appellant temporary custody of the Surdel children also made appellant a party with standing to appeal the matter below.
 III.
Appellant asserts four assignments of error:
1.
 THE TRIAL COURT ERRED IN AWARDING CUSTODY OF THE MINOR CHILDREN TO APPELLANT WITH NO MOTION FOR SAME BEFORE THE COURT, AND WITH NO NOTICE TO APPELLANT OR TO ANY OF THE OTHER PARTIES OF THE COURT'S INTENT TO CONSIDER A CHANGE OF CUSTODY.
Appellant's first assignment of error has two distinguishable components, which we will address separately.
Appellant first contends that the court had no motion before it to address the custody issue. The domestic relations court erred in addressing the issue of custody at the contempt hearing, without prior notice to the various parties that neglect allegations and a change of custody would be considered at the hearing. In re Remmer (July 2, 1987), Cuy. App. No. 53712, unreported (the court has no jurisdiction to modify an earlier custody order sua sponte where there is no motion to change and no notice to parties). However, once the domestic relations court certified the issue of custody to the juvenile court, the latter court could treat the domestic relations court's findings as a motion requesting a temporary reallocation of custody filed by any interested person. Juv.R. 10(A). As such, a "motion" or "complaint" was properly before the juvenile court, in the form of the domestic relations court's findings of need for temporary custody[5]. (The issue of neglect was not properly certified to the juvenile court, and thus, that issue was not properly before the court, in the form of a motion.) This portion of appellant's first assignment of error is overruled.
However, appellant is correct in asserting that the juvenile court could not make a disposition of temporary custody without notice to the parties. While a juvenile court may order emergency temporary custody (which the court below appeared to do), the court must then hold a probable cause hearing to determine whether any charges of abuse, neglect or dependency are in fact true. The juvenile court failed to do this. Its allocation of parental rights and responsibilities was a fait accomli before any interested person was notified that the issue had even arisen.
At the heart of hearings on the allocation of parental rights and responsibilities is the presumptive "basic civil right" of parents to have the care and custody of their own children.Murray, supra; Stanley v. Illinois (1972), 405 U.S. 645, 651,31 L.Ed.2d 536, 558; Santosky v. Kramer (1982), 455 U.S. 745, 753, 71 L.Ed.2d 599,606. Such a right cannot be abrogated, even temporarily, without due process. The legislature and the Supreme Court of Ohio have determined that the juvenile court must serve the parents with notice of adjudicatory and dispositional hearings. That notice must include a summons, the complaint (with specific allegations of neglect and asking for a change of custody), and a clear statement advising the parents that if they do not attend the hearing they may lose temporary custody of their children. R.C. 2151.28(C) and (D). If the juvenile court fails to properly serve a parent, jurisdiction does not attach for a determination of change of custody. In re Corey (1945), 145 Ohio St. 413, paragraph one of the syllabus (where service was not rendered to either parent); In re Brown (1994), 98 Ohio App.3d 337,346.
Appellant's first assignment of error avers lack of proper service to the parties. While it does not directly address the issue of subject matter jurisdiction, the lack of subject matter jurisdiction cannot be waived. This Court can and must entertain a subject matter dismissal at this point. Shawnee Twp. v. AllenCty. Budget Comm. (1991), 58 Ohio St.3d 14, 15. We find the juvenile court's adjudicatory and dispositional order is void for lack of jurisdiction. To this extent, the second portion of appellant's first assignment of error, which avers lack of proper service, is well taken.
Because we find that the juvenile court's order is void, we need not address appellant's remaining assignments of error. App.R. 12(A)(1)(c); David Ingram, D.C., Inc. v. Ohio Civil RightsComm. (1990), 67 Ohio App.3d 648, 651 (where appellate court found trial court lacked jurisdiction, there was no need to address remaining assignments of error). However, because the juvenile court below lacked jurisdiction solely due to its failure to afford due process to mother, that court may appropriately revisit the issue of allocation of parental rights and responsibilities. To that extent, we are reluctant to disregard appellant's remaining assignments of error as "moot" or "irrelevant." In the interests of justice and judicial economy, we turn to appellant's remaining assignments of error.
2.
 THE TRIAL COURT FAR EXCEEDED ITS AUTHORITY IN REMOVING OF MINOR CHILDREN FROM A PARENT AND AWARDING CUSTODY TO APPELLANT AS A CONTEMPT SANCTION AGAINST THE PARENT.
Appellant avers that the court below erred in awarding temporary custody to LCCS as a contempt sanction.
The juvenile court adopted the domestic relations court's position that since mother would soon be arrested for contempt and serve three days in jail, the children were of necessity neglected because mother would be unable to care for them. However, it is clear from the transcript of the contempt hearing that the intent of the domestic relations court was to give LCCS temporary custody not only for the three days of mother's incarceration, but to keep the children until such time as mother complied with the court-ordered visitation.
Cases in Ohio have dealt with this very scenario in which the court uses a change of custody or visitation action to compel the custodial parent to comply with court-ordered visitation. On review, courts have held that even a temporary loss of custody is not a permissible sanction for contempt of court. Culberson v.Culberson (1978), 60 Ohio App.2d 304, 306 ("The children of a dissolved marriage are not pawns whose custody may be used for punishment of a wrongdoer."); Sontag v. Sontag (Apr. 15, 1981), Hamilton App. No.C-800223, unreported; Truitt v. Truitt (1989),65 Ohio App.3d 126, 132. In Truitt, the custodial parent refused to comply with court-ordered visitation with the paternal grandparents; the court in response gave temporary custody to the children services agency. The Truitt court overruled the change of custody, finding that a temporary change of custody was an inappropriate sanction for contempt and was "unconscionable."Truitt, supra at 132. R.C. 2705.05(A)(1) provides the only sanctions permitted for a first offense of contempt are a $250.00 fine, incarceration of up to thirty days, or both.
The juvenile court implemented the findings and orders of the domestic relations court, which clearly used the temporary change of custody as a sanction against mother for her failure to implement court-ordered visitation. Mere recitations of "parental unfitness" and "irreparable harm" to the children do not rise to the finding of fact required by statute to justify a reallocation of custody from a parent to a non-parent. As such, the court below erred and appellant's second assignment of error is well taken.
3.
 THE TRIAL COURT ERRED WHEN IT MODIFIED A PRIOR DECREE ALLOCATING PARENTAL RIGHTS AND RESPONSIBILITIES, AND AWARDED CUSTODY OF MINOR CHILDREN TO APPELLANT, CONTRARY TO THE PROVISIONS OF O.R.C. (sic) 3109.04
Appellant urges that the trial court erred in modifying a prior decree allocating parental rights and responsibilities contrary to the provisions of R.C. 3109.04. R. C. 3109.06
provides that when a domestic relations court certifies custody matters to the juvenile court, the juvenile court must apply the provisions of R.C. 3109.04 regarding allocation of parental rights and responsibilities, rather than the provisions of R.C. 2151.23
dealing with the same issue.[6]
At issue here is whether the juvenile court complied with the requirement of R.C. 3109.04(E)(1)(a) that it make certain findings of fact before modifying an earlier custody order. Under the statute, the court must find: a change in the circumstances of the child or the residential parent; that modification of custody is in the best interests of the child; and, absent the residential parent's consent to the change, a finding that the harm caused by a change is outweighed by benefit to the child from the change. R.C. 3109.04(E)(1)(a)(iii).
The standard for review of the trial court's allocation of parental rights and responsibilities is an abuse of discretion standard. Miller v. Miller (1988), 37 Ohio St.3d 71, 74. Abuse of discretion is more than legal error; the lower court's attitude must be unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. Where an allocation of parental rights and responsibilities is supported by a "`substantial amount of credible and competent evidence'" the decision will not be reversed. Davis v. Flickinger (1997),77 Ohio St.3d 415, 418, quoting Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, syllabus. However, "[w]hile a trial court's discretion in a custody modification proceeding is broad, it is not absolute, and must be guided by the language set forth in R.C. 3109.04."Miller, supra, at 74.
The appellate court in Truitt held that R.C. 2151.23 requires that the trial court must find that the parent is unsuitable even when the court only temporarily takes custody from a parent and gives it to a non-parent. Truitt, supra, at 133. As in the present case, the custody issue in Truitt originated in the domestic relations court and was certified to the juvenile court. The Truitt court went on to say that even if the less demanding standards of R.C. 3109.04 apply, the juvenile court must show that the harm that necessarily results from change of custody is outweighed by the benefit to the children of such a change. Id., citing R.C. 3109.04(B)(1)(c). Since Truitt, the Ohio Supreme Court has clarified that in any custody case which is certified to the juvenile court from another court the standards of R.C. 3109.04 apply, even in those cases where allegations of abuse, neglect or dependency arise. In rePoling, supra, at paragraph two of the syllabus.
R.C. 3109.04(E) requires that before a court modifies a current custody order, it must find changes in the circumstances of the child, the custodial parent, or both, that were unknown to it at the time of the original custody order. The court must also find that modification of custody is "necessary to serve the best interests of the child." The court then must weigh the harm likely to be caused by the change of environment, and find that the benefit to the child outweighs the harm of such a change.
The court below failed to make such a statutory showing. Mother's ongoing refusal to allow father to visit with the children had not changed since before the original order of custody in December 1996. The court made a bare statement that mother and father are "currently unsuitable" to care for the children and that the children "will suffer irreparable harm unless custody is immediately granted to [LCCS]." The court made no effort to substantiate that "irreparable harm" and completely ignored evidence apparently before it in the report submitted to the court by Dr. McPherson (the child psychologist), warning about potential harm to the children if a change of custody is implemented. The court's mere recitation of findings with no reference to the supporting facts is insufficient to rise to the level of "credible evidence" of the mandatory elements of R.C.3109.04(E).
Appellant's third assignment of error is well taken.
4.
 THE TRIAL COURT ERRED IN DETERMINING THAT THE SURDEL CHILDREN ARE NEGLECTED CHILDREN.
The juvenile court determined July 21 that the children were neglected, based on the domestic relations court's finding that the children are "neglected pursuant to ORC (sic) 2151.03."
The domestic relations court failed to certify the issue of neglect to the juvenile court. Since there was no other complaint before the court alleging neglect, the juvenile court did not have this issue properly before it and had no jurisdiction in this matter. Thus, the adjudication of neglect is void and we need not address the lack of procedural due process or the question of whether this adjudication meets the substantive requirements of R.C. 2151.03.
Appellant's fourth assignment of error is well taken.
 IV.
The order of the juvenile court is hereby reversed.
Judgment reversed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Lorain County Court of Common Pleas to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellee.
 Exceptions. ___________________________ WILLIAM R. BAIRD
FOR THE COURT
CARR, J.
QUILLIN, J.
CONCUR
(Quillin, J., retired Judge of the Ninth District Court of Appeals, sitting by assignment pursuant to Section 6(C), Article IV, Constitution.)
[1] Judge Paulette Lilly was the domestic relations judge in the case below. After the case was certified to the juvenile court, Judge Lilly also served as a juvenile court judge in this case, pursuant to the authority granted by R.C. 2301.03(C).
[2] It appears that the domestic relations court did not certify the issue of neglect, although it had found that the children were neglected, as it says, pursuant to R.C. 2151.03. The question of the subject matter certified to the juvenile court is visited in In re Height (1975), 47 Ohio App.2d 203, 207, which found that unless the certifying court explicitly certified the issue of abuse, neglect or dependency, only the issue of custody was properly before the juvenile court. This is discussed in more detail below.
[3] Signed by Judge Lilly in her capacity as Domestic Relations Judge.
[4] A review of case law and the pertinent statutes did not clarify whether a certifying court, relying on the finding of parental unsuitability, can make such a finding only after a hearing specifically on this point. The domestic relations court in the case sub judice made a determination of parental unsuitability at a contempt hearing, without notice to the parties that the issue of parental fitness would be probed. However, since it appears that the juvenile court "consented" to the certification, the issue as it is presented here is moot as to the domestic relations court. It will be problematic as to the juvenile court decision, as will be discussed below.
[5] Certification of the custody issue alone does not give the juvenile court jurisdiction to adjudicate a child abused, neglected or dependent. The issue of the child's status as abused, neglected or dependent must be addressed in the certification from the certifying court. In re Snider (1984),14 Ohio App.3d 353. (The certification of custody to the juvenile court "does not constitute a complaint in the juvenile court that such a child is neglected[.]" Id. at 355.) The domestic relations court in the instant case certified only the issue of allocation of parental rights and responsibility to the juvenile court. Because it did not certify the issue of neglect, the juvenile court could not properly address that issue.
[6] The statutory provision to be applied to cases certified to the juvenile court from another court remains somewhat clouded.In re Height (1975), 47 Ohio App.2d 203, held that the juvenile court had no jurisdiction to address issues of neglect where the domestic relations court had certified only the issue of custody and where no complaint of neglect was before the court. Based on that court's holding, we concluded that in such cases, the provisions of R.C. 3109.04 apply. In re Gamble v. Dotson (Apr. 10, 1991), Lorain App. No. 90CA004856, unreported. We further clarified the issues in Reynolds v. Goll (1992), 80 Ohio App.3d 494, with an extensive review of the history of these two statutes. In Reynolds, the juvenile court gave permanent custody to a non-parent non-relative who had been caring for the child for several years. At issue was whether the court erred in applying the more lenient "best interests of the child" standard of R.C.3109.04 when giving custody to a non-parent, rather than the more stringent standard of R.C. 2151.23(A)(2), which requires that the parent be found "unsuitable" before he loses custody of his own child. The custody issue in that case arose in juvenile court when the parent and the non-parent custodian asked for permanent custody; that court held that R.C. 2151.23 applied, and the parent must first be found "unsuitable" before custody can be given to a non-parent. Id. at 501. In cases before the juvenile court where neglect is alleged, and the court is considering allocation of custody to a non-parent rather than the parent, the standard of R.C. 2151.23(A)(2) is also invoked. That standard involves the common-law presumptive right of a parent to raise his own child, absent a finding of parental unsuitability.
The Supreme Court of Ohio specifically addressed the issue of which standard applies to custody cases certified from the domestic relations court, when subsequent allegations of abuse, neglect or dependency arise. In re Poling (1992), 64 Ohio St.3d 211. The Court held that in cases where custody was originally determined by the domestic relations or other court, a juvenile court may modify custody in response to allegations of abuse, neglect or dependency (under R.C. 2151.23 and R.C. 2151.353), it must do so in accordance with R.C. 3109.04. Id. at paragraph two of the syllabus. The court held that "a finding of neglect, abuse or dependency may or may not, standing alone, be sufficient to warrant a modification of custody under R.C. 3109.04." (Emphasis added.) Id. at 218, fn. 3.